24 Civ. 07064 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLOW FRIEDLAND, STEVEN GONZALEZ,
and MIRIAM SIERADZKI,

                                                            Plaintiffs,

             -against-

CITY OF NEW YORK, FORMER MAYOR BILL
DE BLASIO, FORMER NEW YORK CITY
POLICE    DEPARTMENT    COMMISSIONER
DERMOT SHEA, and FORMER NEW YORK
CITY  POLICE  DEPARTMENT  CHIEF  OF
DEPARTMENT TERENCE MONAHAN,

                                                            Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RENEWED MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*Attorneys for Defendants*
*100 Church Street, 3rd Floor*
*New York, NY 10007*
*By: Yini Zhang*
*Tel: (212) 356-3541*
*E-mail: yinzhan@law.nyc.gov*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................I

TABLE OF AUTHORITIES ........................................................................................II

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT STATEMENT OF FACTS & PROCEDURAL HISTORY .....................2

STANDARD OF REVIEW ...........................................................................................5
   A. Considering Matters Outside the Four Corners of the Complaint........6

ARGUMENT ................................................................................................................7

  POINT I .............................................................................................................7
  PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983
  ARE TIME-BARRED ........................................................................................7
   A. Plaintiffs' Claims are Time-Barred Even Considering COVID-19
    Pandemic Tolling. ....................................................................................8
   B. American Pipe Tolling Is Inapplicable.....................................................9
    i. Plaintiffs Are Not Members of the Sow Certified Class..........10
    ii. Plaintiffs Were Not Members of the Sow Proposed
     Class. ..............................................................................................10

  POINT II ...........................................................................................................18
  THERE WAS PROBABLE CAUSE FOR PLAINTIFFS' ARREST
  AS THEY WERE IN VIOLATION OF THE CURFEW IMPOSED
  BY THE MAYORAL EMERGENCY EXECUTIVE ORDER .....................18

  POINT III...........................................................................................................19
  PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS
  FAIL AS A MATTER OF LAW .....................................................................19
   A. Plaintiffs Cannot Proceed on a Monell Claim as the Alleged
    Constitutional Violations Are Time-Barred. ......................................19
   B. The SAC Fails to Adequately Allege a Relevant Municipal Policy or
    Practice. ..................................................................................................19
    i. The Policing Policies and Procedures Alleged by
     Plaintiffs Are Protest-Related and Were Not Relevant
     to Plaintiffs' Arrests..................................................................21
   C. Plaintiffs' Municipal Liability Claim Should be Precluded. ..............22

# TABLE OF AUTHORITIES

**Cases**

American Pipe & Construction Co. v. Utah,
   414 U.S. 538 (1974)...................................................................................1, 9, 10, 11, 17

An v. City of New York,
   2017 U.S. Dist. LEXIS 84364 (S.D.N.Y. June 1, 2017).........................................21

Aquino v. City of New York,
   16-CV-1577 (GHW), 2017 U.S. Dist. LEXIS 10436
   (S.D.N.Y. Jan. 25, 2017).......................................................................................19, 20

Ashcroft v. Iqbal,
   556 U.S. 662 (2009).....................................................................................................5, 12

Bejaoui v. City of New York,
   13-CV-5667 (NGG) (RML), 2015 U.S. Dist. LEXIS 44087
   (E.D.N.Y. Mar. 31, 2015) .................................................................................................6

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007).....................................................................................................5, 12

C.Q. v. N.Y.C. Dep't of Educ.,
   21-CV-3 (JGK), 2024 U.S. Dist. LEXIS 219704
   (S.D.N.Y. Dec. 3, 2024).....................................................................................................8

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002).............................................................................................6

City of Canton v. Harris,
   489 U.S. 378 (1989).........................................................................................................20

Connick v. Thompson,
   563 U.S. 51 (2011)............................................................................................................20

Corines v. County of Westchester,
   22-CV-5179 (KMK), 2024 U.S. Dist. LEXIS 54050
   (S.D.N.Y. Mar. 25, 2024) ................................................................................................8

Crown, Cork & Seal Co., Inc. v. Parker,
   462 U.S. 345, 103 S. Ct. 2392 (1983)......................................................................10, 11

Daniels v. City of New York,
   2004 U.S. Dist. LEXIS 9361 (S.D.N.Y. May 24, 2004)......................................7

Daniels v. City of New York,
    18-CV-3717 (RA), 2019 U.S. Dist. LEXIS 55746
    (S.D.N.Y. Mar. 31, 2019) .............................................................................................19

Doe v. State Univ. of N.Y. Purchase Coll.,
    617 F. Supp. 3d 195 (S.D.N.Y. 2022) ...........................................................................8

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) .....................................................................................................10

Ellul v. Congregation of Christian Bros.,
    774 F.3d 791 (2d Cir. 2014) ..........................................................................................5

Favourite Ltd. v. Cico,
    42 N.Y.3d 250 (2024) ...................................................................................................8

Galgano v. Cty. of Putnam,
    16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682
    (S.D.N.Y. July 2, 2020) ...............................................................................................21

Goel v. Bunge, Ltd.,
    820 F.3d 554 (2d Cir. 2016) ..........................................................................................6

Harris v. City of New York,
    186 F.3d 243 (2d Cir. 1999) ..........................................................................................6

Harris v. Howard,
    2009 U.S. Dist. LEXIS 105860 (S.D.N.Y. Oct. 23, 2009) ...........................................7

In re "Agent Orange" Prod. Liab. Litig.,
    818 F.2d 210, 214 (2d Cir. 1987) ..........................................................................11, 17

In re UiPath, Inc. Sec. Litig.,
    755 F. Supp. 3d 498 (S.D.N.Y. 2024) .........................................................................10

Iowa Pub. Employees' Ret. Sys. V. MF Global, Ltd.,
    620 F.3d 137 (2d Cir. 2010) ..........................................................................................5

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011) ..........................................................................................6

Leibovitz v. Barry,
    2016 U.S. Dist. LEXIS 128231 (E.D.N.Y. Sep. 20, 2016) ............................................6

Liang v. City of New York,
    2013 U.S. Dist. LEXIS 136795 (E.D.N.Y. Sep. 18, 2013)......................................................7

Mary Jo C. v. New York State and Local Retirement System,
    707 F.3d 144 (2d Cir. 2013)..................................................................................................6

Matter of Jaime v. City of New York,
    41 N.Y.3d 531 (2024)............................................................................................................8

McLaughlin v. Snowlift, Inc.,
    214 A.D.3d 720, 185 N.Y.S.3d 212 (App. Div. 2023) ..........................................................8

Mercado v. City of New York,
    08-CV-2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430
    (S.D.N.Y. Dec. 5, 2011)........................................................................................................20

Modos Chofetz Chaim, Inc. v. RBS Citizens, N.A.,
    14 F.Supp.3d 191 (S.D.N.Y. 2014) .......................................................................................6

Monahan v. City of New York,
    20-CV-2610 (PKC), 2022 U.S. Dist. LEXIS 59124
    (S.D.N.Y. March 30, 2022)....................................................................................................22

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)...................................................................1, 16, 19, 20, 21, 22, 23

Newton v. City of New York,
    779 F.3d 140 (2d Cir. 2015)..................................................................................................21

Noskov v. Roth,
    19-CV-7431 (RA), 2020 U.S. Dist. LEXIS 126411
    (S.D.N.Y. July 17, 2020) .....................................................................................................5, 6

Nwoye v. Obama,
    23-1178-CV, 2024 U.S. App. LEXIS 5143 (2d Cir. Mar. 4, 2024)........................................8

Ormiston v. Nelson,
    117 F.3d 69 (2d Cir. 1997)....................................................................................................7

Owens v. Okure,
    488 U.S. 235 (1999)..............................................................................................................7

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998)....................................................................................................5

iv

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)......................................................................................20

Rodriguez v. Winski,
    973 F. Supp. 2d 411 (S.D.N.Y. 2013)..........................................................19

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006)..........................................................................20

Shak v. JPMorgan Chase & Co.,
    156 F.Supp.3d 462 (S.D.N.Y. 2016)...............................................................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)........................................................................................6

Thea v. Kleinhandler,
    807 F.3d 492 (2d Cir. 2015) ...........................................................................5

Vasquez v. City of New York,
    99-CV-4606 (DC), 2000 U.S. Dist. LEXIS 8887
    (S.D.N.Y. June 29, 2000).................................................................................7

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007)..........................................................................19

**Statutes**

42 U.S.C. § 1983.................................................................................... *passim*

New York Penal Law § 240.20(7) ...........................................................2, 3, 14

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................1, 4, 5, 7, 24

Federal Rules of Evidence Rule 201(b) .............................................................6

**Constitutional Provisions**

U.S. Const. Art. III, Section 2..........................................................................21

**Other Authorities**

Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8).............................8

New York City Emergency Executive Order No. 117 ........................................18

## PRELIMINARY STATEMENT

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and corresponding state law claims, alleging, *inter alia*, false arrest, excessive force, and First Amendment retaliation in connection with plaintiffs' arrest on June 1, 2020. However, the instant action was not filed until September 18, 2024—well after the three-year statute of limitations ran on their § 1983 claims. Although plaintiffs could have availed themselves of the approximately six-month tolling of statute of limitations resulting from Governor Andrew Cuomo's executive orders in response to the Covid-19 pandemic, the statute of limitations on their claims still expired on or about November 4, 2023. The principles of American Pipe & Construction Co. v. Utah are not applicable in this case because plaintiffs were not part of the proposed or certified class in the class action relevant to plaintiffs' argument, Sow, et al v. City of New York, et al. As a result, plaintiffs' federal claims are time-barred and should be dismissed.

Likewise, plaintiffs' municipal liability claims against the City should be dismissed. The Monell claims are based on alleged constitutional violations that are also time-barred. Moreover, plaintiffs fail to adequately allege a municipal policy or practice relevant to their asserted deprivation of rights.

Defendants City of New York ("the City"), Former Mayor Bill De Blasio, Former New York City Police Department ("NYPD") Commissioner Dermot Shea, and Former New York City Police Department Chief of Department Terence Monahan (hereinafter "defendants") now renew their motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failing to state any claim upon which relief can be granted.

## RELEVANT STATEMENT OF FACTS & PROCEDURAL HISTORY[1]

On June 1, 2020, at approximately 5:00 p.m., plaintiffs joined a Black Lives Matter protest in Midtown Manhattan. Second Amended Complaint dated May 14, 2025, 24 Civ. 07064, ECF Dkt. No. 32 (hereinafter "SAC") at ¶¶ 130, 158, 185. Plaintiffs were walking on the sidewalk outside of the New York Times Building on 8th Avenue between West 40th Street and West 41st Street, in Midtown Manhattan. SAC at ¶¶ 130, 159, 186. Plaintiffs alleges they were near the back of a group of Black Lives Matter protesters. SAC at ¶ 131. Plaintiff Friedland observed an interaction between a group of NYPD officers and a group of Black teenagers. SAC at ¶ 133. Plaintiff Friedland claims the police officers "seemed to be harassing and apprehending" the teenagers. SAC at ¶ 133. Plaintiffs stopped and began recording the officers. SAC at ¶¶ 133, 160, 187.

Plaintiffs allege that approximately six police officers approached plaintiffs and yelled at plaintiffs to "back up." SAC at ¶¶ 134, 161, 190. Plaintiffs assert that at approximately 11:30 p.m., the officers threw plaintiffs to the ground, applied zip-tie flex-cuffs, and arrested plaintiffs. SAC at ¶¶ 138, 165, 192. Plaintiffs were transported to Midtown Precinct South, where they and their belongings were searched and processed. SAC at ¶¶ 145-146, 148, 173-174, 176, 198-199, 201.

Plaintiff Friedland was released on June 2, 2020, between approximately 1:30 a.m. – 2:30 a.m. SAC at ¶ 154. Plaintiff Friedland was charged by Summons with New York Penal Law § 240.20(7), Disorderly Conduct. Summons No. 4440045614, dated June 2, 2020, annexed to Declaration of Yini Zhang dated May 30, 2025 (hereinafter "Zhang Decl."), as Exhibit A. Plaintiff Friedland was not arraigned. SAC at ¶ 155. Plaintiff Gonzalez was released on June 2, 2020,

---

[1] The facts alleged in the Second Amended Complaint are accepted as true herein solely for the purposes of this motion.

between approximately 3:30 a.m. – 4:30 a.m. SAC at ¶ 181. Plaintiff Gonzalez was charged by Summons with New York Penal Law § 240.20(7), Disorderly Conduct. Summons No. 4440045600, dated June 2, 2020, annexed to Zhang Decl. as Exhibit B. Plaintiff Gonzalez was not arraigned. SAC at ¶ 182. Plaintiff Sieradzki was released on June 2, 2020, between approximately 2:30 a.m. – 3:30 a.m. SAC at ¶ 206. Plaintiff Sieradzki was charged by Summons with New York Penal Law § 240.20(7), Disorderly Conduct. Summons No. 4440045628, dated June 2, 2020, annexed to Zhang Decl. as Exhibit C. Plaintiff Sieradzki received notification by mail that their case was dismissed. SAC at ¶ 207.

On January 21, 2021, Adama Sow and others filed a putative class action on behalf of individuals who allege they were falsely arrested or suffered physical and emotional harm during various protests related to the death of George Floyd and Black Lives Matter. Sow, et al. v. City of New York, et al., 21-CV-00533 (CM) (GWG) (hereinafter "Sow"), Complaint dated January 21, 2021, ECF Dkt. No. 1, at ¶ 444; SAC at ¶ 17. On March 6, 2021, the First Amended Complaint was filed, which revised the proposed class to

> (a) all persons who were targeted for their First Amendment protected activity including being, *inter alia*, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November 2020; (b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

Sow, First Amended Complaint dated March 5, 2021 (hereinafter "Sow FAC"), ECF Dkt. No. 4, at ¶ 510; SAC at ¶ 22. On August 23, 2023, the Amended Stipulation of Settlement and Order (hereinafter "Sow Amended Stipulation"), as negotiated by the parties, was preliminarily approved

by the court. <u>Sow</u>, ECF Dkt. No. 176. The class was certified on February 22, 2024. <u>Sow</u>, Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter "<u>Sow</u> Final Approval Order"), ECF Dkt. No. 196; <u>see also</u> <u>Sow</u>, Amended Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement dated March 5, 2024 (hereinafter "<u>Sow</u> Amended Final Approval Order"), ECF Dkt. No. 199.

Sometime prior to the <u>Sow</u> class certification, plaintiffs contacted class counsel and the class administrator in <u>Sow</u>, who sent an inquiry to the City on January 19, 2024 about submitting claim forms as <u>Sow</u> class members. SAC at ¶¶ 22-23. On January 22, 2024, the City rejected plaintiffs' claims, finding that plaintiffs' arrests "[we]re not protest-related arrests and therefore the City's response is that the following 3 are NOT eligible." SAC at ¶ 48.

Plaintiffs' counsel in this matter are also class counsel in <u>Sow</u>. See SAC at p. 67; <u>Sow</u> Amended Final Approval Order at p. 2; <u>Sow</u> Final Approval Order at p. 2; <u>Sow</u> Amended Stipulation at p. 31. On September 18, 2024, plaintiffs filed the original complaint. See ECF Dkt. No. 1. On September 19, 2024, the case was referred to the Honorable Colleen McMahon as possibly related to <u>In Re: New York City Policing During Summer 2020 Demonstrations</u>, 20-CV-08924 (hereinafter "<u>In Re: 2020 Demonstrations</u>").[2] It was declined as unrelated on September 24, 2024. <u>See</u> ECF entry dated Sept. 24, 2024. Plaintiffs subsequently filed the FAC on November 4, 2024. ECF Dkt. No. 13. On April 25, 2025, defendants moved to dismiss the FAC in its entirety pursuant to Rule 12(b)(6). <u>See</u> ECF Dkt. No. 25. On May 15, 2025, plaintiffs filed the SAC. <u>See</u>

---

[2] <u>In Re: New York City Policing During Summer 2020 Demonstrations</u> consists of 10 lawsuits against municipal defendants, including the City, based on allegations of improperly policing during protests in the Summer of 2020 through the Winter of 2021, which were consolidated before Judge McMahon. <u>Sow</u> was one of those lawsuits.

ECF Dkt. No. 32. As a result, the Court dismissed defendants' initial motion to dismiss as moot. See ECF Dkt. No. 33.

Defendants now renew their motion before this Court for an order dismissing the SAC in its entirety pursuant to Rule 12(b)(6).

## **STANDARD OF REVIEW**

Rule 12(b)(6) allows for a pleading to be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim" that, if accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). The factual allegations in the complaint must be more than speculative and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." Twombly, 550 U.S. at 555. The pleading must include facts that articulate more than "a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678.

Finally, affirmative defenses may be raised in a pre-answer Rule 12(b)(6) motion if "the defense appears on the face of the complaint." Iowa Pub. Employees' Ret. Sys. V. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)). This includes the defense that the statute of limitations has expired. See Noskov v. Roth, No. 19 Civ. 7431 (RA), 2020. U.S. Dist. LEXIS 126411, *9-10 (S.D.N.Y. July 17, 2020) (citing Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015) (quoting Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014)). "Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly

shows the claim is out of time.'" Id. at *10 (citing Shak v. JPMorgan Chase & Co., 156 F.Supp.3d 462, 474 (S.D.N.Y. 2016) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)); see also Modos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F.Supp.3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.") (alterations internal quotation marks, and citation omitted).

## A.    Considering Matters Outside the Four Corners of the Complaint

The Court may consider documents that are "integral to the complaint," even if that document is not incorporated by reference or otherwise expressly referenced in the complaint. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect," and the plaintiff relied on the document in drafting the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citations omitted). When deciding a motion to dismiss the Court must consider matters of which it may properly take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, (2007); see also Mary Jo C. v. New York State and Local Retirement System, 707 F.3d 144, 149 (2d Cir. 2013). Generally, facts may be judicially noticed if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) and Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). "Court records and other public records are facts of which a court may properly take judicial notice pursuant to Rule 201." Bejaoui v. City of N.Y., 13-CV-5667(NGG) (RML), 2015 U.S. Dist. LEXIS 44087, at *16 (E.D.N.Y. Mar. 31, 2015); see also, e.g., Leibovitz v. Barry, 2016 U.S. Dist. LEXIS 128231 (E.D.N.Y. Sep. 20, 2016) (taking judicial notice of criminal court

records); Liang v. City of New York, 2013 U.S. Dist. LEXIS 136795 (E.D.N.Y. Sep. 18, 2013) (taking judicial notice of complaint reports, follow-up reports, and arrest reports).

Pursuant to these principles, this Court may consider the Summonses issued to plaintiffs in the underlying criminal matters. See generally, Zhang Decl., Exhibits A-C. The summonses are public records related to plaintiffs' conduct in the underlying incident and are directly relevant to plaintiffs' arrests. "'[I]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6),' including arrest reports, criminal complaints, indictments, and criminal disposition data." Harris v. Howard, 2009 U.S. Dist. LEXIS 105860, at *5-6 (S.D.N.Y. Oct. 23, 2009) (quoting Vasquez v. City of New York, 99 Civ. 4606 (DC), 2000 U.S. Dist. LEXIS 8887, at *3 (S.D.N.Y. June 29, 2000)); see also, Daniels v. City of N.Y., 2004 U.S. Dist. LEXIS 9361, at *5 (S.D.N.Y. May 24, 2004) (stating that the court, in deciding a Rule 12(b)(6) motion, can consider criminal complaints and orders of protection because they are public records).

## **ARGUMENT**

### **POINT I**

### **PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 ARE TIME-BARRED**

Plaintiffs' claims under 42 U.S.C. § 1983 are time-barred. The statute of limitations for a § 1983 civil rights action in New York is three years. See Owens v. Okure, 488 U.S. 235, 251 (1999). Such claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis for his action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (citations omitted). In the instant matter, plaintiffs' false arrest, false imprisonment, and excessive force claims accrued on or about the date of their arrest on June 1, 2020. Thus, without any applicable tolling,

the statute of limitations on these claims ran on or about June 1, 2023. The tolling described in the SAC do not save these claims from dismissal.

### A.    Plaintiffs' Claims are Time-Barred Even Considering COVID-19 Pandemic Tolling.

In response to the COVID-19 pandemic, former Governor Andrew Cuomo issued Executive Order No. 202.8 on March 20, 2020, which suspended, *inter alia*, the running of civil statutes of limitations. Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8). The directive was then extended multiple times (collectively, "COVID-19 Executive Orders"), resulting in the suspension of civil statutes of limitation from March 20, 2020 until November 3, 2020. Subsequently, the New York Court of Appeals concluded that the Executive Orders did not merely suspend, but actually tolled applicable deadlines and statutes of limitations. See Favourite Ltd. v. Cico, 42 N.Y.3d 250, 253 (2024); Matter of Jaime v. City of New York, 41 N.Y.3d 531, 537 (2024). In federal cases where New York State law supplies the statute of limitations, such as in 42 U.S.C. § 1983 cases, courts in the Southern District of New York have applied the tolling provisions of the state-law COVID-19 Executive Orders. See, e.g., C.Q. v. N.Y.C. Dep't of Educ., 21-CV-3 (JGK), 2024 U.S. Dist. LEXIS 219704, at *16 (S.D.N.Y. Dec. 3, 2024); Corines v. County of Westchester, 22-CV-5179 (KMK), 2024 U.S. Dist. LEXIS 54050, at *9 (S.D.N.Y. Mar. 25, 2024); Doe v. State Univ. of N.Y. Purchase Coll., 617 F. Supp. 3d 195, 208 (S.D.N.Y. 2022). This is also consistent with the Second Circuit's ruling in Nwoye v. Obama, in which the court found that the District Court did not err in tolling the statute of limitations from March 20, 2020 through November 3, 2020 pursuant to the COVID-19 Executive Orders for an unjust enrichment claim. Nwoye v. Obama, 23-1178-CV, 2024 U.S. App. LEXIS 5143, at *2 (2d Cir. Mar. 4, 2024) (citing McLaughlin v. Snowlift, Inc., 214 A.D.3d 720, 721, 185 N.Y.S.3d 212 (App. Div. 2023)).

Factoring in the tolling period established by the COVID-19 Executive Orders, the clock on plaintiffs' § 1983 claims started on or about November 4, 2020. Accordingly, the statute of limitations on these claims ran on or about November 4, 2023. But plaintiffs did not file the instant case until almost a year later, on September 18, 2024—more than ten months after the statute of limitations expired. Therefore, although plaintiffs received the benefit of this tolling provision, their federal claims are nonetheless time-barred and should be dismissed.

      **B.     American Pipe Tolling Is Inapplicable.**

Plaintiffs assert that the statute of limitations on their claims were tolled by the filing of putative class actions concerning protests that occurred around New York City following the death of George Floyd pursuant to American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). SAC at ¶ 14. Although multiple proposed class actions were filed in the wake of the George Floyd and Black Lives Matter protests in 2020, plaintiffs cite two in particular as relevant, Sow, 21-CV-00533 (CM) (GWG) and Sierra, et al. v. City of New York, et al., 20-CV-10291 (CM) (GWG) (hereinafter "Sierra").[3] Despite the reference to Sierra, plaintiffs cite to Sierra primarily for background information regarding NYPD's policing practices and do not plead any attempts at joining that matter as class members. See generally, SAC at ¶ 213. Accordingly, the arguments below will focus on Sow.

Generally, under American Pipe, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." American Pipe, 414 U.S. at 554. The tolling of the statute of limitations applied both in cases where class certification was denied,

---

[3] Additionally, plaintiffs incorporate by reference the factual allegations of multiple class action and non-class action cases, also not relevant to their claims. See SAC at n. 8.

as in <u>American Pipe</u> and where class certification was granted. <u>See, e.g.</u> <u>Crown, Cork & Seal Co.</u> <u>v. Parker</u>, 462 U.S. 345, 353-54, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983) (applying tolling to class members filing separate actions after class certification was denied); <u>Eisen v. Carlisle &</u> <u>Jacquelin</u>, 417 U.S. 156, 176 n.13, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (stating the statute of limitations were tolled for members who opted out after the class was certified). "This tolling benefit is afforded to active participants in the litigation as well as those who were unaware of the proceedings." <u>In re UiPath, Inc. Sec. Litig.</u>, 755 F. Supp. 3d 498, at *37 (S.D.N.Y. 2024).

       i.      <u>Plaintiffs Are Not Members of the Sow Certified Class.</u>

There is no question that plaintiffs were not members of the class ultimately certified in <u>Sow</u>. <u>See</u> SAC at ¶¶ 8, 20. Plaintiffs correctly state that, as certified, the <u>Sow</u> class members were individuals arrested at 18 specified locations within certain geographic boundaries. <u>See</u> SAC at ¶ 45; Amended Final Approval Order at ¶ 2 (referencing Amended Stipulation at ¶ 32). For arrests made in New York County on June 1, 2020, the location boundaries are defined as: "Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by East 66th Street, Second Avenue, East and West 23rd Street, Sixth Avenue, Central Park South, and Fifth Avenue." Amended Stipulation at ¶ 32. Plaintiffs, on the other hand, claim they were arrested on 8th Avenue between West 40th Street and West 41st Street, in New York County. <u>See</u> SAC at ¶¶ 130, 159, 186. This location is not within the geographic boundaries defined for the June 1, 2020 Midtown Manhattan protests. Accordingly, plaintiffs were not included in the certified class.

      ii.     <u>Plaintiffs Were Not Members of the Sow Proposed Class.</u>

Without any applicable <u>American Pipe</u> tolling, the statute of limitations on plaintiffs' claims ran on or about November 4, 2023, almost a year before the filing of the initial complaint in this case on September 18, 2024. <u>See</u> ECF Dkt. No. 1. Thus, in order for the statute of limitations

to be tolled, plaintiffs must be members of the proposed class in <u>Sow</u>. "The intent of the <u>American Pipe</u> rule is to preserve the individual right to sue of the members of a *proposed class* until the issue of class certification has been decided." <u>In re "Agent Orange" Prod. Liab. Litig.</u>, 818 F.2d 210, 214 (2d Cir. 1987) (emphasis added) (citing <u>Crown, Cork</u>, 462 U.S. at 354 (Powell, J., concurring)). In a failed attempt to save this action, plaintiffs allege in their SAC that they can proceed with this action because the statute of limitations was tolled pursuant to <u>American Pipe</u> as members of the <u>Sow</u> proposed class as they claim.[4] However, the SAC lacks sufficient factual allegations to show that plaintiffs were a part of the <u>Sow</u> proposed class.

Plaintiffs rely on conclusory statements to support their claim that plaintiffs fit into the proposed class as defined by both the <u>Sow</u> initial complaint and the FAC. Plaintiffs first recite the proposed class language from the <u>Sow</u> FAC. SAC at ¶ 22. Plaintiffs then allege that they "were all members of the Proposed Class because, among other things . . ." before quoting portions of the proposed class definition in the <u>Sow</u> FAC. SAC at ¶ 23 (quoting <u>Sow</u> FAC at ¶ 510). Plaintiffs further allege that the "factual allegations below detail, in depth, how they were (among other things)" before once again quoting portions of the proposed class definition in the <u>Sow</u> FAC. SAC at ¶ 24 (quoting <u>Sow</u> FAC at ¶ 510). But the factual allegations pled are insufficient to support a finding that they were a part of the <u>Sow</u> FAC proposed class. While plaintiffs assert that the factual allegations demonstrate how they fit into the <u>Sow</u> FAC proposed class, merely parroting the language of <u>Sow</u> and making conclusory statements about being in the proposed class is

---

[4] If plaintiffs were members of the <u>Sow</u> proposed class as they allege, then plaintiffs' claims were voluntarily dismissed with prejudice under the <u>Sow</u> settlement. The <u>Sow</u> Amended Stipulation states, in relevant part: "As a part of the settlement stipulation, any other locations from the <u>Sow</u> Complaint and Amended Complaint that was not identified in the 18 locations listed in paragraph 32, will be withdrawn and dismissed with prejudice." <u>Sow</u> Amended Stipulation at ¶ 90; <u>see also</u>, <u>Sow</u> Amended Final Approval Order at ¶ 21.

insufficient. "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Despite plaintiffs' claims that they were proposed class members, a review of the factual allegations that the SAC does plead indicates otherwise. The Sow FAC outlined the proposed class as:

> consisting of (a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests"); (b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

Sow FAC at ¶ 510.[5]

Plaintiffs assert that they qualify as proposed class members under both subsection (a) and (b) of the Sow FAC proposed class. Plaintiffs allege that their factual allegations demonstrate "how they were (among other things), 'unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting

---

[5] The proposed class in the original Sow Complaint is defined differently. See Sow Complaint at ¶ 444. Plaintiffs allege that they were also members of that proposed class. However, since the Sow FAC was the operative pleading, its definition controls. Further, even if plaintiffs fall within the proposed class defined in the original Sow Complaint, they ceased to be proposed class members when the Sow FAC redefined the proposed class in a manner that excluded plaintiffs, for the reasons argued below. Similarly to plaintiffs' contention, because only two months transpired between the initial Sow Complaint and FAC, it does not significantly alter the statute of limitations calculation such that plaintiffs' claims would not be time-barred if plaintiffs were not part of the Sow FAC proposed class.

in opposition to police misconduct and in support of police reform,' 'targeted for their First Amendment protected activity … during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020.'" SAC at ¶ 24 (quoting <u>Sow</u> FAC at ¶ 510).

According to plaintiffs, they joined a Black Lives Matter protest in the Midtown Manhattan on June 1, 2020, at approximately 5:00 p.m. SAC at ¶¶ 130, 158, 185. Plaintiffs were walking on the sidewalk outside of the New York Times Building on 8th Avenue between West 40th Street and West 41st Street, back of a group of protesters, when Friedland observed police officers harassing a group of Black teenagers. SAC at ¶¶ 130-133, 159, 186. All three plaintiffs began recording the officers who yelled at plaintiffs to "back up and stop recording." SAC at ¶¶ 133-134, 160-161, 187, 190. Plaintiffs claim that they were "at a safe distance from the officers and at no point was they . . . interfering or obstruction [sic] the police officers in the performance of their official duties, but were approached, thrown to the ground, flex-cuffed, and arrested. SAC at ¶¶ 138, 165, 192.

From plaintiffs' own recitation, they do not fall within the <u>Sow</u> proposed class. Plaintiffs were not arrested or targeted for exercising their First Amendment right to protest in opposition to police misconduct and in support of police reform. Instead, plaintiffs were arrested after they involved themselves in a police investigation and ignored instructions by police officers to "back up." SAC at ¶¶ 134, 161, 190. Plaintiffs do not allege that they complied with the instruction to back up but instead declare in a conclusory fashion that "they maintained a safe distance from the police officers and were not interfering in any way with any police conduct." SAC at ¶¶ 136, 162, 189. Indeed, plaintiffs were not issued Summonses for protest-related charges. Instead, the

Summonses charge all three with New York Penal Law § 240.20(7), Disorderly Conduct for recording a fight and causing a crowd to gather. See Zhang Decl., Exhibits A-C.

Moreover, plaintiffs do not plead any facts regarding the police activity they allegedly observed. They simply allege that plaintiff Friedland believed police officers "*seemed* to be harassing and apprehending" the teenagers. SAC at ¶ 133 (emphasis added). In fact, in addition to overseeing the protests, NYPD was responding to and conducting investigations due to the increase in crimes, which plaintiffs acknowledge. See SAC at ¶ 69 ("[T]here were some instances of property damage and injuries to NYPD officers occurred at some of these protests."). As the Honorable Colleen McMahon stated in In Re: 2020 Demonstrations, "[i]t is beyond dispute that previous demonstrations, in New York and elsewhere — including BLM demonstrations — had escalated during the night hours from peaceful protest 'to include actions of assault, vandalism, property damage, and/or looting.' Such conduct, much of it criminal in nature, posed a risk of 'severe endangerment and harm to [residents'] health, safety, and property.'" In re N.Y.C. Policing During Summer 2020 Demonstrations, 548 F. Supp. 3d 383, 413 (S.D.N.Y. 2021) (citation omitted).[6] The criminal activity included property damage in midtown Manhattan on the night of June 1, 2020.[7] Thus, plaintiffs involved themselves in police activity seemingly without knowing

---

[6] See also, Shattered Glass in SoHo as Looters Ransack Lower Manhattan, NY TIMES (June 1, 2020), available at https://www.nytimes.com/2020/06/01/nyregion/nyc-looting-protests.html (last accessed May 28, 2025); Looting and Violence Continues in New York City Despite Unprecedented Curfew, THE GUARDIAN (June 2, 2020), available at https://www.theguardian.com/us-news/2020/jun/02/new-york-city-looting-despite-curfew (last accessed May 28, 2025).

[7] See After Peaceful Protests, Looters Strike at Macy's and Across Midtown, NY TIMES (June 2, 2020), available at https://www.nytimes.com/2020/06/02/nyregion/nyc-looting-protests.html (last accessed May 28, 2025).

or questioning the context. In other words, plaintiffs interfered with officers performing their official duties and ignored orders to back up, for which they were arrested.

Additionally, the instruction from the police officers to "back up" undermines plaintiffs' claim that they were in the proposed class. The <u>Sow</u> proposed class, as quoted by plaintiffs, included individuals "unlawfully detained and/or arrested without fair warning or ability to *disperse*." SAC at ¶ 24 (quoting <u>Sow</u> FAC at ¶ 510) (emphasis added). Here, all three plaintiffs alleged that the police officers were "yelling at the group . . . to *back up* and stop filming." SAC at ¶¶ 134, 161, 190 (emphasis added). Plaintiffs allege that "they maintained a safe distance from the police officers and were not interfering in any way with any police conduct." SAC at ¶¶ 136, 162, 189. If true, since there are no allegations that the officers were blocking their way, then plaintiffs had the "ability to disperse" when they were instructed to "back up." Plainly, plaintiffs were not "unlawfully detained and/or arrested without fair warning or ability to disperse." <u>Sow</u> FAC at ¶ 510.

Importantly, plaintiffs' circumstances are notably different from the <u>Sow</u> named plaintiffs. For example, <u>Sow</u> plaintiff David Jaklevic alleged that, while at a protest on May 30, 2020, officers directed protestors down a specific street, then officers on bicycles formed a wall around protestors and struck Mr. Jaklevic with their bicycles. <u>Sow</u> FAC at ¶¶ 130, 132, 134, 136. Another <u>Sow</u> plaintiff Alexandra de Mucha Pino, while marching on the Brooklyn Bridge on May 30, 2020, encountered officers forming a wall on the bridge, who allegedly charged at the protestors without issuing any orders. <u>Sow</u> FAC at ¶¶ 153, 155-157. A third <u>Sow</u> plaintiff, Adama Sow, was allegedly trapped by police officers while attending a protest in Mott Haven on June 4, 2020, and was not permitted by officers to leave despite multiple requests, pepper sprayed in the eye, and arrested. <u>Sow</u> FAC at ¶¶ 348-352, 375. Likewise, the other named plaintiffs in <u>Sow</u>, while protesting, met

with walls of police officers and/or were arrested without orders to disperse. See generally, Sow FAC. Indeed, even plaintiffs' citation of Judge McMahon's decision in In Re: 2020 Demonstrations in support of their Monell claim addresses NYPD's alleged use of kettling, crowd control through excessive force, and mass arrests without probable cause. See generally, SAC at ¶¶ 210-220 (citing In re N.Y.C. Policing During Summer 2020 Demonstrations, 548 F. Supp. 3d 383 (S.D.N.Y. 2021)). Those scenarios are not what happened here. Plaintiffs do not allege that police officers utilized kettling or was attempting crowd control through excessive force, or even executed mass arrests without probable cause as alleged in Sow. In fact, plaintiffs acknowledge in the SAC that the City informed them that their arrests "[we]re not protest-related arrests" and therefore not eligible to join the Sow certified class. SAC at ¶ 48. Here, on the alleged fringes of a protest, plaintiffs interfered with a police investigation unrelated to their attendance at a march, ignored instructions to back up from the officers, and were arrested as a result.

Lastly, as plaintiffs indicate in the SAC, they were recording during the incident. As a part of the presentation of plaintiffs' claims to the City during the Sow class settlement process, class counsel provided video recordings of the incident. However, because the videos were disclosed for the purposes of exploring settlement, defendants have not attached them as exhibits.[8] The two video support the position that plaintiffs were not arrested at a protest for protest-related activities. Briefly, plaintiffs appear to be alone walking down a sparsely populated street, and there is no group of protestors in their immediate vicinity. One individual on video turns, yells, and runs towards a group of people, most of whom appear to be police officers. Rather than maintain a "safe distance," individuals gather at what appears to be at most arm's length of the officers before one

---

[8] Should the Court wish to review the videos, defendants will provide them in the manner most convenient for the Court.

officer steps in front of the individuals, repeatedly instructing them to "back up." At no point on the videos do the officers instruct plaintiffs to "stop recording." When the individuals fail to put distance between them and the officers as instructed, officers begin making arrests. The arrests appear to be neither during a protest, because there are few to no other individuals around, nor are they related to plaintiffs exercising their rights to protest.

Even though plaintiffs assert otherwise, they were not members of the proposed class as defined in the <u>Sow</u> FAC. Plaintiffs were not detained or arrested without fair warning or the ability to disperse. Plaintiffs were also not targeted or arrested for exercising their First Amendment rights during a protest in opposition to police misconduct and in support of police reform. Rather, plaintiffs were arrested after they interfered with other police activity and ignored warnings to distance themselves from that activity. That they may have been present at a protest earlier is coincidental, not integral to their arrests later that evening. And even if plaintiffs were at the location because they were allegedly taking part in a protest, for the reasons stated above, plaintiffs' arrests were unrelated to any protest. The purpose of <u>American Pipe</u> "is not to toll the statute of limitations for persons such as these . . . plaintiffs who were not members of either the proposed or certified class." <u>In re "Agent Orange"</u>, 818 F.2d 210 at 214.[9]

Without any applicable tolling, the statute of limitations on plaintiffs' claims ran on or about November 4, 2023. Therefore, plaintiffs' claims under Section 1983 are time-barred and should be dismissed.

---

[9] Some of the amendments from the FAC to SAC discusses whether the tolling of the statute of limitations pursuant to <u>American Pipe</u> can retroactively be negated following a change in the class definition. <u>See</u> SAC at ¶¶ 25-40. Plaintiffs further state that they requested defendants cite to any case holding that "a toll can be retroactively deleted." <u>See</u> SAC at ¶ 41. However, these are not factual allegations supporting plaintiffs' claims, but instead improper arguments that are more appropriate for a memorandum of law.

**POINT II**

**THERE WAS PROBABLE CAUSE FOR PLAINTIFFS' ARREST AS THEY WERE IN VIOLATION OF THE CURFEW IMPOSED BY THE MAYORAL EMERGENCY EXECUTIVE ORDER**

Notably, there was another Executive Order at play on June 1, 2020, which plaintiffs violated. Under Emergency Executive Order No. 117, former Mayor De Blasio prohibited individuals and vehicles in public, with exceptions for essential workers, from June 1, 2020 at 8:00 p.m. until June 2, 2020 at 5:00 a.m. N.Y.C. Emer. Exec. Order No. 117 (June 1, 2020). Indeed, plaintiffs admit that their arrests occurred at approximately 11:30 p.m. SAC at ¶¶ 138, 165, 192. But plaintiffs conveniently ignore the fact that they were in violation of the curfew, even while extensively discussing the imposed curfew. See SAC at ¶¶ 72-99. While the SAC challenges the "retaliatory and selective enforcement of the Curfew Orders," plaintiffs make no arguments as to how or even if the curfews were unfairly enforced in their arrests, despite the fact that they were, in fact, breaking curfew. SAC at ¶ 338. Moreover, plaintiffs do not dispute the validity of the curfews, nor plead any violation of a federal right for the curfew itself. Importantly, the court has held that "[i]t is so patently obvious that it was not unconstitutional for the Mayor to issue the curfew orders." In Re 2020 Demonstrations, 548 F. Supp. 3d at 412. Accordingly, plaintiffs were in violation of the valid curfew executive order when they were arrested and there was probable cause to arrest them for this reason alone. Thus, their pleading falls short of alleging any claims of constitutional violations as to these plaintiffs.

## POINT III

### PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS FAIL AS A MATTER OF LAW

Any claims against the City must be dismissed because they are not only time-barred but plaintiffs failed to state a claim on the merits.

### A. Plaintiffs Cannot Proceed on a <u>Monell</u> Claim as the Alleged Constitutional Violations Are Time-Barred.

Plaintiffs' <u>Monell</u> claims should be dismissed because the constitutional violations alleged are time-barred. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). However, municipal liability cannot be based on time-barred acts. <u>See</u> <u>Daniels v. City of New York</u>, 18-CV-3717 (RA), 2019 U.S. Dist. LEXIS 55746, at *9 (S.D.N.Y. Mar. 31, 2019) (municipal liability "claims are derivative in nature and are therefore dismissed to the extent that they are predicated on Plaintiff's time-barred claims . . . ."). Plaintiffs bring claims of false arrest, excessive force, first amendment violations, first amendment retaliation, due process violation, and selective enforcement. All of these claims are predicated on the actions taken by NYPD members on June 1, 2020. Since the acts specified in the SAC on which municipal liability is based are time-barred for the reasons stated above, this claim against the City also fails.

### B. The SAC Fails to Adequately Allege a Relevant Municipal Policy or Practice.

In order to hold the City liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiffs must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." <u>See</u> <u>Aquino v. City of New York</u>, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *7-8 (S.D.N.Y. Jan. 25, 2017) (citing <u>Rodriguez v.</u>

Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013)). A municipality may not be held liable under 42 U.S.C. § 1983 solely based on *respondeat superior*. See Monell v. Dep't of Social Services, 436 U.S. 658, 663 n.7, 694-95 (1978). Thus, a "municipality is not vicariously liable for its employees' actions under 42 U.S.C. § 1983." Aquino, 16 Civ. at *7 (citing Connick v. Thompson, 563 U.S. 51, 60 (2011)). However, municipalities are "liable for 'their own illegal acts.'" Id. (citations omitted).

Plaintiffs can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see Monell, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of those with whom municipal employees will come into contact.'" Aquino, 16 Civ. at *8 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of New York, 08 CV 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (citing Monell, 436 U.S. at 691, 694).

A claim for municipal liability cannot stand where there is no causal connection between the plaintiff's alleged constitutional violation and the alleged unlawful policy, custom or practice. See, e.g., Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation."); Galgano v. Cty. of Putnam, 16-CV-3572 (KMK), 2020

U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020) (same). Stated differently, even

where a plaintiff identifies an unconstitutional custom or practice, if that plaintiff's rights were not

violated as a result of the application of that custom or practice the claim fails. See U.S. Const.

Art. III, Section 2; An v. City of New York, 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June

1, 2017) (holding that standing, including injury in fact, is required to bring Monell claim).

        i.      The Policing Policies and Procedures Alleged by Plaintiffs Are Protest-Related and Were Not Relevant to Plaintiffs' Arrests.

Even if plaintiffs' municipal liability claims were not based on time-barred acts, they still

fail because plaintiffs cannot demonstrate the existence of a relevant NYPD policy or custom that

led to the deprivation of their rights as it relates to the instant arrests. For plaintiffs to prevail on

their municipal liability cause of action, they must identify the existence of a "policy or custom"

that led to the deprivation of their constitutional rights. See Newton v. City of New York, 779 F.3d

140, 152 (2d Cir. 2015). Here, plaintiffs discuss at length investigations into the conduct of NYPD

in response to protests in opposition to police misconduct and in support of police reform.

However, for the reasons stated above, plaintiffs' arrests were unrelated to any protest, even if

plaintiffs were purportedly in a protest location and may have been allegedly taking part in a

protest. Importantly, much of the conduct plaintiffs point to as unconstitutional are simply not

relevant to the circumstances of plaintiffs' arrest. For example, plaintiffs were not arrested as part

of a "perceived group without having made an individualized determination that there was

probable cause [for their] arrests," SAC at ¶ 267. Similarly, as stated above, plaintiffs cite Judge

McMahon's decision in In Re: 2020 Demonstrations in support of their Monell claim but only

addresses NYPD's use of kettling; crowd control through excessive force, including the use batons,

bicycles, and pepper spray; and mass arrests without probable cause. See generally, SAC at ¶¶

210-220 (citing <u>In re 2020 Demonstrations</u>, 548 F. Supp. 3d 383). Likewise, the various reports, investigations, and examples of other protests discuss similar tactics that were not utilized here. <u>See generally</u>, SAC ¶¶ 65-124. Even if they were relevant, the fact remains that these policies and procedures are specifically in relation to NYPD's response to *protests* and protest-related arrests. Such allegations, which are prevalent in the SAC, are not relevant to the underlying actions described by the individual plaintiffs and cannot be used to bolster plaintiffs' municipal liability claim.

Further, plaintiffs' assertion that "Defendants employed tactics developed and modified over the course of many years by Defendants . . . including the policies, practices, and customs complained of herein, and also described and litigated" in cited cases to support a purported <u>Monell</u> claim is inadequate. <u>See</u> SAC at ¶ 229. "The fact that a civil action was filed and settled voluntarily is not evidence of liability on the part of the City, let alone evidence that the City was on notice of a claimed deficiency in the training it gave to NYPD members. Absent a finding of liability by a judge or jury, the existence of historical civil actions raising similar claims 'establishes . . . that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as [plaintiff] alleges here, not that those violations actually occurred.'" <u>Monahan v. City of New York</u>, 20-CV-2610 (PKC), 2022 U.S. Dist. LEXIS 59124, at *52 (S.D.N.Y. March 30, 2022) (citations omitted).

### C.    Plaintiffs' Municipal Liability Claim Should be Precluded.

Lastly, plaintiffs' <u>Monell</u> claim regarding policing at protests should be precluded because there exists ongoing relief directly addressing this claim. As previously stated, plaintiffs' counsel are class counsel on <u>Sow</u>. <u>See</u> SAC at p. 60; <u>Sow</u> Amended Final Approval Order at p. 2; <u>Sow</u> Final Approval Order at p. 2; <u>Sow</u> Amended Stipulation at p. 31. The <u>Sow</u> plaintiffs sought declaratory and injunctive relief to end NYPD's policing practices regarding protests—a claim

that was then consolidated into In Re: 2020 Demonstrations. Sow, First Amended Complaint dated January 21, 2021, ECF Dkt. No. 1, at ¶¶ 8, 525. The parties in In Re: 2020 Demonstrations settled for, in relevant part, the adoption and revision of certain policies and procedures on the policing by NYPD of "First Amendment Activities," which is a multi-year process. Decision and Order, dated February 7, 2024, In Re: 2020 Demonstrations, 20-CV-08924, ECF Dkt. No. 1174. Thus, plaintiffs' counsel are not only part of that process but, at a minimum, are very familiar with the changes being made to the policing policies and practices of First Amendment Activities that make up the instant Monell claims.[10] Nevertheless, plaintiffs now seek redress in this new action for the very same claims that In Re: 2020 Demonstrations resolved. Such attempts should be precluded by the Court.

For these reasons, plaintiffs' municipal liability claim fails and should be dismissed.

---

[10] Although Sow was settled and dismissed, plaintiffs' counsels are involved in the In Re: 2020 Demonstrations agreement on injunctive relief in another matter, Kayla Rolon, et al., v. City of New York, et al., 21-CV-2548. See In Re: 2020 Demonstrations, ECF Dkt. No. 1176.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that this Court grant their renewed motion to dismiss pursuant to Rule 12(b)(6), dismiss the Second Amended Complaint in its entirety, with prejudice, and for such other and further relief as the Court deems proper and just.

Dated:    New York, NY
          May 30, 2025

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of
New York
*Attorney for Defendants*
New York, New York 10007
(212) 356-2657

By:    /s/ *Yini Zhang*[11]
       Yini Zhang
       Senior Counsel
       Special Federal Litigation Division

cc:    Counsels of Record (By ECF)

---

[11] In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 8,195. I have relied on the word count function of Microsoft Word to prepare this certification.