**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Willow Friedland, Steven Gonzalez, and Miriam Sieradzki; | |
| *Plaintiffs,* | **24-cv-7064 (DLC)** |
| v. | |
| City of New York; Former Mayor Bill De Blasio; Former New York City Police Department Commissioner Dermot Shea; and Former New York City Police Department Chief of Department Terence Monahan; | **Plaintiffs Request Oral Argument** |
| *Defendants.* | |

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
Elena L. Cohen
1639 Centre St., Suite 216
Ridgewood, New York 11385
t:  (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t:  (718) 783-3682

**WYLIE STECKLOW PLLC**
Wylie Stecklow
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019

**BELDOCK LEVINE & HOFFMAN LLP**
Jonathan C. Moore
David B. Rankin
99 Park Avenue, PH/26th Floor
New York, New York 10016

July 10, 2025

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................................iv

PRELIMINARY STATEMENT......................................................................................................1

FACTUAL STATEMENT................................................................................................................3

      A.     Plaintiffs are assaulted and arrested as part of protest enforcement, and subjected to protest-specific arrest processing procedures.............................................................3

      B.     History of the *Sow* class action..................................................................................4

      C.     Policies at issue in *Sow*.............................................................................................8

STANDARDS OF REVIEW...........................................................................................................10

ARGUMENT ..................................................................................................................................11

    I.     Plaintiffs were, at the very least, "arguably" members of the *Sow* Proposed Class. ........12

      A.     Plaintiffs, at a minimum, arguably fit under Clause (a) because they were arrested for First Amendment conduct during the Protests. ..................................................12

          1.     Plaintiffs were engaged in black-letter First Amendment activity. ...........13

          2.     Plaintiffs' arrests and assaults were "during" the Protests. ......................14

          3.     "Without fair warning" and "ability to disperse" are part of a non-exhaustive list, and would be satisfied even if they were mandatory.................................15

      B.     Plaintiffs, at a minimum, arguably fit under Clause (b) because they were arrested pursuant to NYPD's protest policies. .........................................................................17

    II.    Defendants' *Monell* Arguments Fail for the Same Reasons as their *American Pipe* Arguments. .........................................................................................................................19

    III.   Defendants' Curfew Arguments Fail..................................................................................20

    IV.   Defendants' Citation-Free Arguments About the Non-Party Binding Effect of the *Sow* Settlement and the *In re Policing* Consent Decree are Baseless.............................................21

      A.     Defendants' argument that a settlement Plaintiffs are bound by a settlement they are not parties to is barred by Supreme Court precedent.........................................22

      B.     Defendants' claim that a non-class consent decree with only injunctive relief bars damages claims is meritless. ....................................................................................24

CONCLUSION...................................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*ACLU of Ill. v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) ................................................................. 13

*Allen v. City of New York,*
    466 F. Supp. 2d 545 (S.D.N.Y. 2006) ............................................... 9, 18

*American Pipe & Construction Co. v. Utah,*
    414 U.S. 538 (1974) .............................................. 1, 10, 11, 18

*and Smith v Pennington,*
    352 F3d 884 (4th Cir. 2003) ................................................................. 11

*Animal Sci. Prods., Inc. v Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.),*
    279 FRD 90 (EDNY 2012) ........................................................ 2, 23, 24

*Ashcroft v. Iqbal,*
    556 US 662 (2008) ................................................................................ 10

*Bell Atl. Corp. v. Twombly,*
    550 US 544 (2007) ................................................................................ 10

*Brown v. Ticor Title Ins. Co.,*
    982 F.2d 386 (9th Cir. 1992) ............................................................... 24

*Burley v. City of New York,*
    03-cv-2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005) ............. 9

*Cameron v. Tomes,*
    990 F.2d 14 (1st Cir. 1993) ................................................................. 24

*Case, et al. v. City of N.Y., et al.,*
    233 F.Supp.3d 372 (SDNY 2017) ....................................................... 10

*Compagnie Financiere v. Merrill Lynch,*
    232 F.3d 153 (2d Cir. 2000) ............................................................... 12

*Crowder v. Lash,*
    687 F.2d 996,1009 (7th Cir 1982) ...................................................... 24

*Defries v Union Pac. R.R. Co.,*
    104 F.4th 1091 (9th Cir. 2024) ............................................... 10, 11, 14

*Dinler v City of NY,*
    2012 US Dist LEXIS 141851 (SDNY Sep. 30, 2012) ................*passim*

*Doe v. Pataki,*
  481 F.3d 69 (2d Cir. 2007) .................................................................................................11

*Dowling v City of NY,*
  2013 US Dist LEXIS 142108, at *13-14 (EDNY Sep. 30, 2013)  ...................................16

*Encyclopedia Brown Prods. v. Home Box Off., Inc.,*
  No. 91 Civ. 4092 (PKL), 1998 WL 734355 (S.D.N.Y. Oct. 15, 1998)............................15

*Fana v City of NY,*
  2018 US Dist LEXIS 51579, at *25 (SDNY Mar. 27, 2018)  ....................................16, 18

*Fields v. City of Phila.,*
  862 F.3d 353 (3d Cir. 2017) ..............................................................................................13

*Fordyce v. City of Seattle,*
  55 F.3d 436 (9th Cir. 1995) ...............................................................................................13

*Fortner v. Thomas,*
  983 F.2d 1024 (11th Cir. 1993) .........................................................................................24

*Frank v. United Airlines, Inc.,*
  216 F.3d 845 (9th Cir. 2000)..............................................................................................24

*Fraser v. City of New York,*
  No. 20-CV-5741 (NGG), 2022 US Dist. LEXIS 137335, 2022 WL 3045524 (E.D.N.Y. Aug. 1,
  2022)...................................................................................................................................14

*Gerskovich v. Iocco,*
  No. 15-CV-7280 (RMB), 2017 US Dist. LEXIS 110640, 2017 WL 3236445 (S.D.N.Y. July 17,
  2017)...................................................................................................................................13

*Glik v. Cunniffe,*
  655 F.3d 78 (1st Cir. 2011) ................................................................................................13

*Greenwich Life Settlements, Inc. v Viasource Funding Group, LLC,*
  742 F Supp 2d 446 (SDNY 2010) .....................................................................................22

*Harris v McAlistor,*
  2023 US Dist LEXIS 159272 (WDNY Sep. 8, 2023).........................................................17

*Haus v. City of New York,*
  03-cv-4915 (RWS)(MHD) 2006 WL 1148680 (S.D.N.Y. April 24, 2006) ....................9, 18

*Higginbotham v. City of New York,*
  105 F. Supp. 3d 369 (S.D.N.Y. 2015)...........................................................................13, 15

*Hiser v. Franklin,*
  94 F.3d 1287 (9th Cir. 1996)..............................................................................................24

*Irizarry v. Yehia*,
 38 F.4th 1282 (10th Cir. 2022) ................................................................................................. 13

*Jones-Bey v. Caso*,
 535 F.2d 1360 (2d Cir. 1976) .................................................................................................. 24

*Larsen v. City of New York, et al.*,
 04-cv-0665 (RWS) (S.D.N.Y.) ................................................................................................. 9

*Mandal v. City of New York ("Mandal I")*,
 No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 02-cv-6537 (WHP), 2006 WL 2950235 (S.D.N.Y.
 Oct. 17, 2006) ......................................................................................................................... 4

*Mandal v. City of New York ("Mandal II")*,,
 No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 2007 WL 3376897 (S.D.N.Y. Nov. 13, 2007)
 .................................................................................................................................... 4, 9

*McMunn v Babcock & Wilcox Power Generation Group, Inc.*,
 869 F3d 246 (3d Cir 2017) ....................................................................................................... 22

*Norris v. Slothouber*,
 718 F.2d 1116 (D.C. Cir. 1983) (per curiam) ......................................................................... 24

*In re NY City Policing During Summer 2020 Demonstrations*,
 20-cv-8924, ECF No. 1099-2 .............................................................................................. *passim*

*In re NY City Policing During Summer 2020 Demonstrations*,
 548 F Supp 3d 383 (SDNY 2021) ..................................................................................... 8, 10, 19, 20

*People v Brown*,
 25 NY2d 374 (1969) ............................................................................................................ 16, 17

*People v Cagan*,
 60 Misc 2d 1037 (1st App Term 1969) ................................................................................... 15

*People v Pennisi*,
 61 Misc 3d 1224[A], 2018 NY Slip Op 51731[U] (Crim Ct, Queens County 2018) .................... 16

*Peoples v Annuci*,
 2021 US Dist LEXIS 60909 (SDNY Mar. 30, 2021) ................................................................ 11, 14

*Retirement Sys. v YPF Sociedad Anonima*,
 980 F Supp 2d 487 (SDNY 2013) ............................................................................................ 11

*Reyes v City of NY*,
 2024 US Dist LEXIS 179371 (SDNY Sep. 30, 2024) .............................................................. 17

*Rusfeldt v City of NY*,
 2024 US Dist LEXIS 177255 (SDNY Sep. 30, 2024) .............................................................. 15

*Sawtell v E.I. Du Pont De Nemours & Co.*,
  22 F3d 248 (10th Cir. 1994) ................................................................................. 10

*Schiller v City of NY*,
  2008 US Dist LEXIS 4253 (SDNY Jan. 23, 2008) ............................................ 19

*Shamir v. City of N.Y.*,
  804 F.3d 533 (2d Cir. 2015) ................................................................................ 10

*Sharpe v. Winterville Police Dep't*,
  59 F.4th 674 (4th Cir. 2023) ............................................................................... 13

*Smith v Bayer Corp.*,
  564 US 299 (2011) .................................................................................... 2, 22, 23

*Smith v. City of Cumming*,
  212 F.3d 1332 (11th Cir. 2000) .......................................................................... 13

*Sow v. City of New York*,
  21-cv-533, ECF No. 49 ................................................................................ *passim*

*Stapleton v Barrett Crane Design & Eng'g*,
  725 F App'x 28 (2d Cir. 2018) ........................................................................... 22

*Tardif v. City of New York*,
  991 F. 3d 394 (2d Cir. 2021) .............................................................................. 11

*Taylor v. Sturgell*,
  553 US 880 (2008) ................................................................................................. 1

*Thompson v Global Contact Servs., LLC*,
  2021 US Dist LEXIS 146143 (EDNY Aug. 4, 2021) ....................................... 22

*Turner v. Lieutenant Driver*,
  848 F.3d 678 (5th Cir. 2017) .............................................................................. 13

*United States v Adams*,
  2025 US Dist LEXIS 62719 (SDNY Apr. 2, 2025) ............................................. 1

*Zellner v. Summerlin*,
  494 F.3d 344 (2d Cir. 2007) ............................................................................... 10

**Other Authorities**

U.S. Const, amend. I ............................................................................................ *passim*

U.S. Const, amend. XIV ........................................................................................... 20

18A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4455 (2d ed.) ........................................ 23

Fed. R. Civ. P. 8(a)(2) ........................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 10

Fed. R. Civ. P. 23 ............................................................................................................ 2, 7, 23

Fed. R. Civ. P. 23(b)(2) .......................................................................................................... 24

Fed. R. Civ. P 23(e)(5)(A) ....................................................................................................... 7

N.Y. Civ. R. L. § 79-P ............................................................................................................ 14

## PRELIMINARY STATEMENT

Defendants' motion takes the remarkable position that people plainly within the scope of a class action's initial complaint — but who neither were part of the ultimate class nor received the "procedural protections prescribed in…Rule 23" (*Taylor v. Sturgell*, 553 US 880, 901 (2008)) — somehow do not receive the benefit of the well-settled *American Pipe*[1] tolling doctrine.

Defendants' argument begins on sound enough footing:  It says Plaintiffs' "SAC lacks sufficient factual allegations to show that plaintiffs were a part of the *Sow* proposed class," and therefore they do not receive tolling.  ECF No. 36 ("DMOL") at 11.[2]  And if Defendants were correct about membership in the proposed class, they would be right.  But that is where things fall apart:  As shown below, including in diagrams of the *Sow* proposed class definition, Plaintiffs' SAC alleges they were (among other things) "targeted," "for their First Amendment protected activity," and that happened "*during*" — not "at" — the 'Protests.'"  First Amended Complaint, *Sow v. City of New York*, 21-cv-533, ECF No. 49 ¶ 510 (emphasis added) ("*Sow* FAC").   They were certainly, as required by the relevant standard, at least *arguably* members of the proposed class in *Sow*.

From there, Defendants' argument that *Monell* claims are ill-pled relies on this same mistaken move:  First, Defendants argue the underlying constitutional violations would be time-barred, which rises and falls with their mistaken tolling argument.  And second, it argues that Plaintiffs' policy claims fail because (they say) Plaintiffs' arrests were not "protest-related arrests."  DMOL at 22.  That is, Defendants do not seem to contest (for present purposes) that the policies alleged are well-pled as policies; instead, they contest that the policies were relevant to Plaintiffs' arrests.  But for the same reason Defendants are wrong that Plaintiffs are outside the *Sow* proposed class, they are also wrong

---

[1] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)

[2] All pincites are to internal (e.g., not ECF) pagination unless specifically noted.  Additionally, "in quotations from cases" Plaintiffs "omit citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated."  *United States v Adams*, 2025 US Dist LEXIS 62719, at *1, n 1 (SDNY Apr. 2, 2025).

1

to declare that the well-pled policies were not applied to Plaintiffs: Plaintiffs were arrested as part of protest enforcement, during a protest, because they were recording police engaged in misconduct.

Last, Defendants' remaining arguments — which lack any citation to any authority — ignore the basic structure of how judgments, classes, and contracts work. For example, Defendants say in a footnote that "plaintiffs' claims were voluntarily dismissed with prejudice under the *Sow* settlement" (DMOL at 11 n. 4), without bothering to explain how any settlement could bind non-parties and non-class members. As it happens, the Supreme Court has directly rejected the kind of "virtual representation" approach Defendants are gesturing at here, because "in the absence of a certification under [Rule 23], the precondition for binding" a non-party — that is, class certification of a class that includes the non-party — is "not met." *Smith v Bayer Corp.*, 564 US 299, 315 (2011). Similarly, Defendants' expansive argument that any "*Monell* claim regarding policing at protests should be precluded because there exists ongoing relief directly addressing this claim" does not cite even a *single* case, because it cannot. DMOL at 22. And that is because "every federal court of appeals that has considered the question has held that" even "a class action seeking *only declaratory or injunctive relief* does not bar subsequent individual suits for damages." *Animal Sci. Prods., Inc. v Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 279 FRD 90, 114 (EDNY 2012) (collecting cases) (emphasis in original). Since Defendants readily admit the consent decree they cite only provides "declaratory and injunctive relief" (DMOL at 22-23) — and for that matter, that the consent decree is not *even* an injunctive class — they have no basis for the ipse dixit that damages claims are somehow barred.

In short, Defendants' arguments beyond the misguided suggestion Plaintiffs were not part of the *Sow* proposed class are really complaints about the choices *Defendants* made in resolving *Sow*. Defendants "want[] to bind [Plaintiffs] as [] member[s] of a class action (because it is only as such that a nonparty in [Plaintiffs'] situation can be bound)." *Smith*, 564 US at 315. "But wishing does not make it so." *Id.* A "proposed class action" cannot "bind nonparties." *Id.* Defendants could have agreed

to certify a broader class, and eliminate *all* claims from any 2020 protest (and they theoretically still could raise that possibility). Or, indeed, they could have simply agreed that Plaintiffs were members of the class. *See* Green Ex. 1. But having made the choices they did, they must now face the damages claims here.

## FACTUAL STATEMENT

As relevant to Defendants' arguments, there are essentially three relevant factual pieces: (1) what happened to each of the Plaintiffs, (2) the litigation history of the consolidated protest cases, and in particular the class certified in *Sow*, and (3) the policies at issue in *Sow* and alleged here. While the operative complaint provides full detail, those narrower fact issues are described below.

### A. Plaintiffs are assaulted and arrested as part of protest enforcement, and subjected to protest-specific arrest processing procedures.

Plaintiffs each "attended a Black Lives Matter protest in Midtown Manhattan." ECF No. 31 ("SAC") ¶¶ 130; 158; 185. During that protest, as part of marching, they stopped to "record [NYPD] officers" whom Plaintiffs saw "harassing … a group of young Black teenagers." SAC ¶¶ 133; 160; 187. Plaintiffs were "filming these events on her phone at a safe distance from the officers and at no time … interfering or obstruct[ing] the police officers in the performance of their official duties." SAC ¶¶ 136; 162-63; 188-89. Much as members of the NYPD did during other protests in 2020, acting according to informal policy and practice, "[a]fter noticing they were being recorded, approximately six NYPD officers … became verbally aggressive, yelling at the group – that included [all Plaintiffs] – to back up and stop filming." SAC ¶¶ 134; 161; 190. And after trying to stop the filming, the "officers surrounded [Plaintiffs], threw [Ms. Friedland and Mx. Sieradzki] to the ground, and then began placing the group under arrest and using plastic zip-tie flexcuffs." SAC ¶¶ 138; 165; 193.

Even if they had committed the conduct charged, Plaintiffs were eligible for process on the street. But, in keeping with long-standing, unconstitutional conduct, Defendants sent Plaintiffs to the

protest-specific mass arrest processing facility that delayed processing. *See, e.g.,* SAC ¶¶ 167-183; 193-209; *see also,* ¶ 229. That is, like in *Mandal v. City of New York*, 02-cv-1234 (WHP)(FM) (SDNY) and related cases challenging NYPD's written and unwritten policies and practices enacted after the police shooting of Amadou Diallo in 1999 and formalized in writing as early as 2001, the City applied a policy where NYPD detained and fully processed people arrested for non-criminal violations who were otherwise eligible to be processed and released with Desk Appearance Tickets ("DATs"). SAC ¶ 229(a); *see also, e.g., Mandal v. City of New York,* No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 02-cv-6537 (WHP), 2006 WL 2950235, at *4-7 (S.D.N.Y. Oct. 17, 2006) ("*Mandal I*"); *Mandal v. City of New York*, No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007) ("Mandal II") (noting that approximately 38 Mandal plaintiffs prevailed at trial on claims that "the City had an unconstitutional written policy of denying persons arrested at demonstrations individual consideration for summonses and DATs").[3]

Plaintiffs were then subjected to mass arrest processing, with other protesters from the same protest, and the accompanying practices that other protesters faced, such a refusals to loosen overtight flexcuffs, overlong detention, and the like. *See, e.g.,* SAC ¶¶ 167-183; 193-209. In other words, Plaintiffs were treated as part of a larger, perceived group with the other protesters they had been marching with: That was *why* they were subjected to mass arrest processing, by definition. *Id.; but see,* DMOL at 21 (declaring otherwise, without explanation).

## B. History of the *Sow* class action.

As relevant here, in the *Sow* First Amended Complaint ("*Sow* FAC"),[4] there were two class definitions. The parties appear to agree that if Plaintiffs were arguably members of the *Sow* Proposed

---

[3] The details of this policy are discussed further below.

[4] Though for slightly different reasons, the parties appear to agree the only relevant definition here is the one contained in the *Sow* FAC. *Accord, e.g.,* SAC ¶¶ 27; 27 n. 6; DMOL at 12 n. 5.

Class (definition below), they receive tolling, while if they were not, they do not.  A history of the

relevant dates is in the SAC in paragraph 27, but the upshot is that if Plaintiffs are members of the

*Sow* Proposed Class, the claims are timely.

That definition, in two freestanding parts, is as follows:

(a) all persons who were targeted for their First Amendment protected activity including
being, inter alia, unlawfully detained and/or arrested without fair warning or ability to
disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and
unsafe custodial arrest processing during the New York City protest marches in opposition
to police misconduct and in support of police reform from May 28, 2020 through no
earlier than November, 2020 (the "Protests"); or

(b) all persons who have been or will be unlawfully detained and/or arrested without fair
warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice,
and/or custom of, without legal justification, conducting retaliatory arrests and detentions
of individuals protesting in opposition to police misconduct and in support of police
reform.

*Sow* FAC ¶ 510 ("*Sow* Proposed Class").  Given the density of these definitions, Plaintiffs have

prepared slightly modified Reed-Kellogg diagrams of the definitions to help parse them:



*Sow Proposed Class, Clause a*



*Sow Proposed Class, Clause b*

Green Exs. 2 and 3.   As shown in the diagrams, Clause (a) essentially boils down to "all persons who were targeted (during the Protests) for their First Amendment activity," while Clause (b) essentially boils down to "all persons who were arrested or without fair warning or ability to disperse or detained unlawfully (since May 28, 2020) pursuant to [certain] NYPD policies."

A class was ultimately certified in *Sow*.[5]  But the certified class was narrower:  It covered 18 specified protests, within delineated boundaries.  *Sow,* ECF No. 176 ("*Sow* Stipulation and Order") ¶ 32 ("*Sow* Certified Class").  It also limited class membership to people arrested, unlike (for example) the members of the Clause (a) class that would have claims for being subject to force without any arrest.  *Id.*  Accordingly only members of the narrower, *Sow* Certified Class received any of the required

---

[5] That settlement came about after at least 10 different rounds of discovery sanctions, and after the City's lead lawyer was caught forging documents to cover up discovery misconduct and abruptly fired.

Rule 23 procedural protections, including notice, opportunity to object or opt out, and the like.[6]  *Sow* Stipulation and Order; *see also Sow*, ECF No. 200 (Order describing the notice provided).  That is, the *Sow* Stipulation and Order did not provide any notice or safeguards under Rule 23, except as to the members of the *Sow* Certified Class.

Judge McMahon held a fairness hearing on the *Sow* class, and noted a remarkable response: "Out of 1248 eligible class members, 987 claims were filed—an extraordinary 79% response rate" particularly in light of the fact that "105 [members] had already settled their claims.  *Sow*, ECF No. 200 at 2-3.  Likewise, Judge McMahon noted that there were only "three requests to opt out, two of which were for cases in suit prior to preliminary approval," and that "no objection was received to any aspect of the settlement."  *Id.* at 5 and 13.

Finally, after discovering the existence of *Sow*, Plaintiffs tried to file claims in *Sow*, because they were arrested at one of the certified protests.  But the City refused to process the claims.  Green Ex. 1 at 1.  Class Counsel wrote, saying they were trying to "confirm the City will not assert that their claims are extinguished by this settlement," and asked that "[i]f that is not the case, [the City] please say something immediately."  Green Ex. 1 at 1.  The City never responded.  Green Decl. ¶¶ 4-5.

Accordingly, Plaintiffs never filed objections to the *Sow* Stipulation and Order and the *Sow* Certified Class, since there was no suggestion at that time that it could bind them — and indeed, had there been such a suggestion at any point, Plaintiffs (and likely countless others) would have objected. Green Decl. ¶ 6.[7],[8]

---

[6] Indeed, Plaintiffs here did not receive *formal* notice; they found out about *Sow* because of the public outreach, and wrote in to the Class Administrator for more information.

[7] Perhaps tellingly, as far as Plaintiffs can tell, the City has not filed motions in any non-*American Pipe* case arising out of the 2020 protests suggesting the either the *Sow* Stipulation and Order or the Consent Decree binds parties to those cases. Yet, many such cases are ongoing.

[8] It is also less than clear that Plaintiffs — as non-members of the *Sow* Certified Class — **could** file objections.  Rule 23 says only a "class member may object to the propos[ed]" certification order.  Fed. R. Civ. P 23(e)(5)(A).  But Rule 23's text

Finally, separate from *Sow*, the other cases consolidated on 20-cv-8924 entered into a stipulated consent decree. *See In re NY City Policing During Summer 2020 Demonstrations*, 20-cv-8924, ECF No. 1099-2 ("Consent Decree," with the case "*In re Policing*"); ECF No. 1147 (granting final approval of the Consent Decree). As relevant here, that Consent Decree provides solely injunctive relief, subject to certain oversight. *Id.*

### C. Policies at issue in *Sow*.

In *Sow*, the policies and practices alleged covered a wide array of conduct. As Judge McMahon described it in largely rejecting the City's motion to dismiss, plaintiffs there "alleged that the NYPD had a policy or custom of using excessive force and mass arrests to effectuate crowd control at First Amendment-protected activities." *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 396 (SDNY 2021). The policies at issue included, for example, the longstanding practice the City has of "detaining and fully processing people arrested for non-criminal violations who were otherwise eligible to be processed and released with" DATs "based on the fact that they participated

---

presumes what Defendants seem to contest here: That a class settlement can only *bind* class members. As a matter of basic due process, if a class action could bind those outside the class, those people would need the ability to object.

in demonstrations."  *Sow* FAC ¶ 429(a); *see also, Mandal II,* 2007 WL 3376897, at *2.[9]  *Accord, e.g., Dinler v City of NY*, 2012 US Dist LEXIS 141851, at *67-69 (SDNY Sep. 30, 2012).[10]

Likewise, the *Sow* complaint targeted a policy of retaliatory arrests based on *perceived* associations:  Targeting people not just because they are "*in*" a protest, but also because they are in "proximity to a perceived" protest.  *Sow* FAC ¶ 466.  That is, as detailed in Judge Sullivan's opinion in *Dinler*, there is a history of NYPD officers arresting non-protesters — that is, people at protests as "legal observers, as curious bystanders, or for wholly unrelated reasons, such as walking to or from work" — because of a perceived association with the protest.  2012 US Dist LEXIS 141851, at *45-46.  *Sow* explicitly included such claims, *see, e.g., Sow* FAC ¶¶ 466, 477, 484 (allegations Defendants targeted people "based on their position in or proximity to a perceived group"), and covered those by

---

[9] This policy is extensively set out in the *Sow* FAC — and the SAC in this case — including:

- *Burley v. City of New York*, 03-cv-2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005) (class action arising from mass arrests of over 200 demonstrators during 2002 WEF in New York City challenging, inter alia, (1) NYPD policy of detaining perceived protesters who were otherwise eligible to be released earlier with DATs for excessive periods of time and denying them consideration for DAT release on the grounds of their perceived participation in protests and (2) policy and practice of using plastic flex cuffs as unreasonable and excessive because of the manner in which the handcuffs were applied and the length of time for plaintiffs were handcuffed);

- *Allen v. City of New York*, 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) (challenging mass arrests made in February 2002 related to the WEF alleging, inter alia, that the protestors remained on the sidewalk, walking two abreast and followed all rules of protesting, yet Executive Officers including Defendant Monahan, arrested them and "the police deliberately held [protesters] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court");

- *Haus v. City of New York*, 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006) (class action challenging arrests, detentions, and prosecutions of around 300 people in connection with February 15, 2003 anti-war protests, alleging that arrests were made without probable cause and pursuant to Department directive to "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing." *See also Larsen v. City of New York, et al.*, 04-cv-0665 (RWS) (S.D.N.Y.).

[10] "Neither of Defendants' theories is persuasive with respect to the No-Summons Policy.  The No-Summons Policy did not merely target unlawful conduct, as Defendants contend. Rather, it aimed at unlawful conduct connected to the RNC. (Defs.' Policies 56.1 ¶ 151.) Thus, if one individual jaywalked as part of an antiwar march, and another individual jaywalked simply to save time, the former faced arrest while the latter risked only a summons, and the only factor accounting for that difference was the former's association with expressive activity directed at the RNC. Not even all protestors were equal under the No-Summons Policy. Only viewpoints within the RNC umbrella exposed protestors to arrest; those protesting issues unrelated to the RNC did not share that risk."

proposing a class that included arrests or force "during" a protest, rather than "at" one. *Sow* Proposed Class, clause (a).

The SAC and claims here track, largely verbatim for *American Pipe* reasons, the claims in *Sow*.

## STANDARDS OF REVIEW

The applicable federal rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery. *See* Fed. R. Civ. P. 8(a)(2); *see also, e.g., Shamir v. City of N.Y.*, 804 F.3d 533, 556 (2d Cir. 2015). Under the familiar standard of review applicable to Defendants' partial motion to dismiss under Rule 12(b)(6), the Court must accept as true all plausibly pleaded allegations in the FAC and draw all reasonable inferences therefrom in Plaintiff's favor. *See, e.g., See Case, et al. v. City of N.Y., et al.*, 233 F.Supp.3d 372, 382 (SDNY 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is inappropriate. *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007). To the extent there are any disputed facts, they are for a jury to decide. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368, 371 (2d Cir. 2007) (citing cases). As long as there is enough factual matter to 'nudge[ plaintiffs'] claims…'across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v. Iqbal*, 556 US 662, 680 (2008), *quoting Twombly*, 550 U.S. at 570.

As the Second Circuit, and this Court, have recognized, allegations in other complaints or official reports can provide sufficient support for allegations. *See, e.g., In re NY City Policing During Summer 2020 Demonstrations*, 548 F.Supp.3d 383, 401-404 (SDNY 2021).

As far as *American Pipe* tolling is concerned, the question is not whether Plaintiffs *in fact* were members of a proposed class. Instead, "[w]here the scope of the class definition in an initial complaint '**arguably**' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *Defries v Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) (emphasis added), *discussing Sawtell v E.I. Du Pont De*

*Nemours & Co.*, 22 F3d 248, 253 (10th Cir. 1994) *and Smith v Pennington*, 352 F3d 884, 895 (4th Cir. 2003).

Finally, Defendants cannot make new arguments on reply.  *Tardif v. City of New York*, 991 F. 3d 394, 404 n.7 (2d Cir. 2021).

## ARGUMENT

As explained below, Defendants' arguments all fail.  Plaintiffs were, on the face of the definitions, members of the *Sow* proposed class.  And for that reason, Defendants' other major arguments fail.  Meanwhile, Defendants' half-made arguments that suggest a non-class consent decree or class that doesn't include Plaintiffs somehow binds the parties here run headlong into well-settled, binding law.

"Where the scope of the class definition in an initial complaint '***arguably***' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them."  *Defries*, 104 F.4th at 1099 (emphasis added).  The point of that rule, like "the whole point of *American Pipe*," "is to allow unnamed class members to rely on the pending class action in lieu of filing their own protective lawsuits," and save courts from a deluge of me-too, protective filings.  *Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*, 980 F Supp 2d 487, 491-492 (SDNY 2013).  *See also,* Green Decl. ¶¶ 8-11.

Analyzing membership in a proposed class — performed with "arguably" gloss described above — is "subject to the general principles of contract interpretation" or other textual interpretation.  *Peoples v Annuci*, 2021 US Dist LEXIS 60909, at *6 (SDNY Mar. 30, 2021).  *Cf., e.g., Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007) (same for consent decrees).  So, "[t]he primary objective of a court in

11

interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere v. Merrill Lynch*, 232 F.3d 153, 157 (2d Cir. 2000).[11]

I.    **Plaintiffs were, at the very least, "arguably" members of the *Sow* Proposed Class.**

The heart of Defendants' motion is the declaration that Plaintiffs "do not fall within the *Sow* proposed class." DMOL at 13. But that declaration fails to engage with the definition actually proposed in *Sow*: Plaintiffs directly and clearly allege (among other things) that they were "targeted for their First Amendment protected activity," and that their arrests happened "during the … Protests." *Sow* Proposed Class Definition. Defendants' argument otherwise turns on additional requirements found nowhere in the *Sow* Proposed Class Definition: Plaintiffs *were* arrested for First Amendment activity, *during* the Protests. But (at least as Defendants see it) they were "not arrested at a protest *for protest-related activities*." DMOL at 16. Since "protest-related activities" appear nowhere in the *Sow* Proposed Class Definition — and Defendants make no attempt to ground it there — their attempt to graft additional requirements on the *Sow* Proposed Class fails.

The two potentially relevant definitions here each have a number of clauses, but they boil down to simple-to-apply criteria. First, Clause (a) covers (1) "all persons," (2) targeted "for their First Amendment protected activity," (3) "during … [the] Protests," and provides a non-exhaustive list of the kind of targeting might be involved. *Sow* Proposed Class Definition. Second, Clause (b) covers (1) "all persons" who were (2) "arrested" or "detained," (3) without fair warning or ability to disperse, (4) since May 28, 2020, and (5) pursuant to NYPD's policies and practices related to protests.

A.    **Plaintiffs, at a minimum, arguably fit under Clause (a) because they were arrested for First Amendment conduct during the Protests.**

---

[11] Because the *Sow* Proposed Class is not ambiguous, there is no need for parol evidence. However, if the Court believes it *is* ambiguous, that ambiguity is a subject for discovery.

Defendants do not appear to dispute Plaintiffs meet the "all persons" criteria. Rather, they argue Plaintiffs were not engaged in First Amendment activity and that Plaintiffs were not arrested *at* the relevant protest.[12]

### 1. Plaintiffs were engaged in black-letter First Amendment activity.

Plaintiffs explicitly allege they were engaged in First Amendment activity. Each Plaintiff was involved in "record[ing] … officers" who were engaged in the public performance of their official duties. SAC ¶¶ 133-134; 160-61; 187-90. And, indeed, the sole "purpose of the instruction to stop filming was solely to prevent … Plaintiffs from having video records of what those officers were doing." *See, e.g.,* SAC ¶ 137. Moreover, various parts of the arrest processing, including "tightening of the handcuffs," were "punitive and intended to chill filming police and protesting police misconduct." SAC ¶¶ 142; 170; 196. In fact, Defendants themselves draw the causal arrow here: Plaintiffs were arrested and subjected to force for "***recording*** a fight" that involved police. DMOL at 14 (emphasis added). So, that causation is not even in dispute.

While the Second Circuit has not directly weighed in, every single circuit to consider it has uniformly recognized a First Amendment right to record the police performing their duties in public. See *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Fields v. City of Phila.*, 862 F.3d 353, 359 (3d Cir. 2017); *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 681 (4th Cir. 2023); *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Nor are there murmurs of disagreement in this circuit: Courts in this Circuit (and this District) have consistently reached that same result. *See, e.g., Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 380-81 (S.D.N.Y. 2015); *Gerskovich v. Iocco*,

---

[12] Defendants do not appear to dispute that the protest at issue was part of the defined "Protests" in the *Sow* Proposed Class definition.

No. 15-CV-7280 (RMB), 2017 US Dist. LEXIS 110640, 2017 WL 3236445, at *6 (S.D.N.Y. July 17, 2017); *Fraser v. City of New York*, No. 20-CV-5741 (NGG), 2022 US Dist. LEXIS 137335, 2022 WL 3045524, at *4 (E.D.N.Y. Aug. 1, 2022).[13]

For this reason, Defendants' seeming complaint that "plaintiffs do not plead any facts regarding the police activity they allegedly observed" is neither here nor there (DMOL at 14): Plaintiffs plead that the police they were recording were engaged in the public performance of their duties. The First Amendment does not (and cannot) turn on the content of what Plaintiffs were recording.

Given that the question is whether Plaintiffs are "arguably" covered by the *Sow* Proposed Class (*Defries*, 104 F.4th at 1099), there is little doubt Plaintiffs satisfy the "targeted … for their First Amendment protected activity" prong, given the uniformity of the case law on whether recording police in public is protected by the First Amendment.

*2. Plaintiffs' arrests and assaults were "during" the Protests.*

Defendants next argument is, essentially, that Plaintiffs' "arrests were unrelated to any protest." DMOL at 17. It is here that Defendants' arguments simply depart from analysis of the actual *Sow* Proposed Class.

Membership in the *Sow* Proposed Class does not turn on whether a person's arrest or assault was "[]related" to a protest in some particular sense. Rather, to avoid that potential pitfall entirely — particularly given the history the City has of arresting people who happened to be near protests "for wholly unrelated reasons" to that protest (*Dinler,* 2012 US Dist LEXIS 141851, at *45-46) — the *Sow* Proposed Class only required that the arrests be "*during*" a protest. *Sow* Proposed Class. Since interpretation of the definition is "subject to the general principles of contract interpretation" (*Peoples*, 2021 US Dist LEXIS 60909, at *6), the choice of the words "during the … Protests" — and the

---

[13] Since the 2020 protests at issue here — and partially in response to the NYPD conduct during those protests — the City and State both codified a right to record police in their public duties, in part intended to remove any doubt about this constitutional right. *See, e.g.,* N.Y. Civ. R. L. § 79-P; N.Y.C. Admin. C. § 14-189.

decision to eschew other constructions like "protest-related" or "*at* the … Protests" — must be given meaning. *See, e.g., Encyclopedia Brown Prods. v. Home Box Off., Inc.*, No. 91 Civ. 4092 (PKL), 1998 WL 734355, at *9 (S.D.N.Y. Oct. 15, 1998) (under New York law, contracts are construed to "give[] a reasonable and effective meaning to all terms" and not to leave "a part unreasonable or of no effect.") (citation omitted).

In short, the word "during" is makes clear the definition is broader than the atextual gloss Defendants try to give it: It covers any First Amendment activity *during* one of the Protests, and Defendants do not dispute that Plaintiffs were arrested *during* one of the Protests — they only dispute whether the arrests were "protest-related."[14] *E.g.,* DMOL at 13. Since the only question under the *Sow* Proposed Class is whether what happened was "during" a protest, Defendants' argument fails.

### 3. *"Without fair warning" and "ability to disperse" are part of a non-exhaustive list, and would be satisfied even if they were mandatory.*

Defendants also try to argue that "the instruction from the police officers to 'back up' undermines plaintiffs' claim that they were in the proposed class," and so does the fact that Plaintiffs did not stop filming, notwithstanding that Plaintiffs "maintained a safe distance from the police officers and were not interfering in any way with any police conduct." DMOL at 15.[15] This argument fails for two reason: (1) it is not a necessary criteria in the class definition, and (2) the argument is misguided on the First Amendment and dispersal order law.

---

[14] For similar reasons, Defendants' complaint that Plaintiffs "were not issued Summonses for protest-related charges" fails doubly (DMOL at 13-14): (1) nothing in the *Sow* Proposed Class makes distinctions based on "protest-related charges," and (2) disorderly conduct generally is *the* protest-related charge, if there is such a thing, and charges under subsection (7) are routinely deployed against protesters. *See, e.g., Higginbotham v City of NY*, 105 F Supp 3d 369, 374 (SDNY 2015); *Rusfeldt v City of NY*, 2024 US Dist LEXIS 177255, at *4 (SDNY Sep. 30, 2024). Indeed, that history is long. *People v Cagan*, 60 Misc 2d 1037, 1039 (1st App Term 1969) (rejecting subsection 7 charges for protest conduct). Plus, the City itself agreed to define *all* disorderly conduct — including 240.20(7) — as a "Red Light" offense requiring special approval for any arrests at protests in the Consent Decree. So, to say now that disorderly conduct is somehow not a "protest-related charge[]" (DMOL at 13-14) borders on disingenuous.

[15] The complaint does not, as Defendants go on to say, allege Plaintiffs "ignored instructions to back up from the officers." DMOL at 16. But as explained below, even if that were true, that is not enough to show an arrest is lawful.

To begin with, these criteria are part of a non-exhaustive list: "persons" are members of the class if they are targeted for First Amendment activity, "including being, *inter alia*" three examples. Defendants do not (because they cannot) argue that what happened to Plaintiffs is fundamentally unsimilar to the items in the list, so the "*inter alia*" and "including" in the definition mean Defendants' attempt to read the list as exclusive and exhaustive fails as a matter of plain text.

Beyond that, however, Defendants' arguments miss the point legally.  It is long standing doctrine that an order to disperse — particularly when a First Amendment right is involved — must give unambiguous, clear warning.  *See, for examples, People v Brown*, 25 NY2d 374, 377 (1969); *People v Pennisi*, 61 Misc 3d 1224[A], 2018 NY Slip Op 51731[U], *2 (Crim Ct, Queens County 2018).  And, indeed, without more, "refusal to obey every command to back up is merely annoying and distracting" — not criminal.  *Fana v City of NY*, 2018 US Dist LEXIS 51579, at *25 (SDNY Mar. 27, 2018); *accord* SAC ¶¶ 136; 162-63; 188-89.[16]  So, an officer who "merely … advised [Plaintiff] that he would be arrested if he did not stop taking [video footage] inside of the building" did not give an order to disperse that would trigger criminal consequences for failure to comply.  *Pennisi*, 2018 NY Slip Op 51731[U] at *5.  So too for statements like "[w]e are going to talk right here or not at all" and similar others that *implicitly* demanded a person leave.  *Brown*, 25 NY2d at 377.  In short, simply yelling "back up" is *not* giving a dispersal order.  Nor is failure to obey an order, at least without actual interference and when the failure to obey is "merely annoying," criminal.  So Plaintiffs were, indeed, "[(1)] unlawfully detained and/or [(2)] arrested without fair warning," even if satisfying one of those two were a necessary criteria.  *See* Proposed Class.

---

[16] *See also, e.g., Dowling v City of NY*, 2013 US Dist LEXIS 142108, at *13-14 (EDNY Sep. 30, 2013) ("Plaintiff does not dispute the fact that he did not back up when told to do so, and that he continued to disobey the command when Officer Gasquez repeated it. … [But] failing to obey the order was itself not enough to create probable cause.").

Similarly misguided are Defendants' arguments about the demand to stop filming. Defendants seem to suggest that declining to follow a police order to stop filming alone was unlawful. In addition to refusing to stop filming being at most "annoying" (discussed above), that view is barred by well-settled First Amendment law. There is a clear First Amendment "right to record police in public performing their official duties," and the "appellate courts that have addressed this question have uniformly recognized this right." *Reyes v City of NY*, 2024 US Dist LEXIS 179371, at *12 (SDNY Sep. 30, 2024) (collecting cases and surveying history). And directing a person to stop filming violates that right. *See, e.g., id.*; *see also, Harris v McAlistor*, 2023 US Dist LEXIS 159272, at *11 (WDNY Sep. 8, 2023) (claim defendants "violated … First Amendment rights by removing [plaintiff] from the Erie County DMV after he refused to stop video recording" was well-pled). Again, Defendants do not overcome the basic fact that, presuming the allegations true, Plaintiffs were arrested and assaulted — in Defendants' *own words* — for "recording a fight" involving police. DMOL at 14.

### B. Plaintiffs, at a minimum, arguably fit under Clause (b) because they were arrested pursuant to NYPD's protest policies.

Clause (b) covers (1) "all persons" who were (2) "arrested" or "detained," (3) without fair warning or ability to disperse, (4) since May 28, 2020, and (5) pursuant to NYPD's policies and practices related to protests. Defendants do not appear to dispute (1), (2), or (4). Instead, they argue that Plaintiffs received an opportunity to disperse because they were told to "back up" and "stop filming," and Plaintiffs were not subjected to protest policies. Each of these arguments fails.

First, for substantially[17] the reasons discussed above in Point I(A)(3), Plaintiffs were arrested without any fair warning or ability to disperse: Yelling "back up" is simply not an order to disperse. So, Plaintiffs "could not have defied an order which was never given." *Brown*, 25 NY2d at 377. And

---

[17] The major difference is that for Clause (b), the "without fair warning" and "ability to disperse" prongs are part of the definition, as opposed to items on a non-exhaustive list. So the first part of the point above does not apply.

even if they *did* defy an order, mere defiance is not enough for probable cause.  *Fana v City of NY*, 2018 US Dist LEXIS 51579, at *25.

Second, the SAC alleges Plaintiffs were subjected to the City's protest-related policies, even taking at face value Defendants' claim that the arrests were not *at* the protest.  Recall *Dinler*:  The City's toolkit for protest policing has long involved arresting people at protests as "legal observers, as curious bystanders, or for wholly unrelated reasons, such as walking to or from work" because of a perceived association with the protest.  *Dinler*, 2012 US Dist LEXIS 141851, at *45-46.  *Sow* challenged these practices directly, as do Plaintiffs here.  And confirming Plaintiffs' arrests were under those policies, they were handcuffed in plastic zip-ties (not metal cuffs) (SAC ¶¶ 138-39; 165-66; 192-93); they were processed in a mass-arrest processing center set up *for* the protests (SAC ¶¶ 144-154; 173-181; 198-205); and because of the zip-ties, and the deployment policies in place during the Protests, "NYPD did not have tools on hand that even could loosen the handcuffs" and Plaintiffs were forced to endure the overtight cuffs *because* they were arrested as part of protest mass arrests.  SAC ¶¶ 141; 169; 195.  That is:

> "Specifically, because they were arrested at a protest, Plaintiffs were subjected to flex-cuffing pursuant to Defendants' Protest Arrest Processing Policies, in connection with which Defendant City did not supply Defendants with enough of cutting tools with which to loosen or remove flex-cuffs, or any flex-cuff pads, which are designed to prevent the very types of injuries Plaintiffs and other arrestees suffered as a result of having flex-cuffs applied to them."

SAC ¶¶ 271; 349 (similar).  That is the exact claim made in *Sow*.  *See Sow* FAC ¶¶ 470 (same as SAC ¶ 271); 566 (same as SAC ¶ 349).

In short, Plaintiffs here fit exactly into the *Sow* claims based on the long line of cases about situations in which arrest processing is dragged out because perceived participation in or association with a protest.  *Dinler*, 2012 US Dist LEXIS 141851, at *67-69.  *See also, Allen v. City of New York*, 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) (claims that "the police deliberately held [protesters] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court"); *Haus*

*v. City of New York*, 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006) (claims the City had police "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing"); *Schiller v City of NY*, 2008 US Dist LEXIS 4253, at *4, n 1 (SDNY Jan. 23, 2008) (challenge to the City's "practice of detaining all arrestees, no matter how minor the infraction, rather than issuing summonses on the street" at protests).  That is what Clause (b) covers — or at a bare minimum "arguably" covers — and Defendants' arguments otherwise fail.

## II.  Defendants' *Monell* Arguments Fail for the Same Reasons as their *American Pipe* Arguments.

Defendants' arguments about the *Monell* claims largely track their arguments about the *Sow* Proposed Class:  First they argue "Plaintiffs' *Monell* claims should be dismissed because the constitutional violations alleged are time-barred," then they continue to say that Plaintiffs did not face the protest-related policies detailed in the complaint.[18]

On the first point, the parties appear to agree on the principle:  If the underlying claims are timely (because Plaintiffs were arguably part of the *Sow* Proposed Class), dismissal is inappropriate; if the underlying claims are not (because Plaintiffs were *not* arguably part of the *Sow* Proposed Class), dismissal is appropriate.

On the second, for the reasons detailed above, Defendants' argument ignores the claims actually pled.  Here, as in *Sow* — and as in numerous predecessor cases, for that matter — the policies alleged include the basic fact that the City's protest-related policies are applied to non-protesters frequently.  People near protests — as "legal observers, as curious bystanders, or for wholly unrelated reasons, such as walking to or from work" for example — are routinely arrested because of a perceived

---

[18] Defendants do not appear to argue those policies are not well-pled, and make not effort to distinguish Judge McMahon's decision in *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 396 (SDNY 2021) finding those claims well-pled.  Given that, Plaintiffs proceed from the assumption that all parties agree Judge McMahon's decision essentially lays out the rules for the Court to apply to the facts here.

association with the protest. *Dinler,* 2012 US Dist LEXIS 141851, at *45-46. That is, as set out in Point I(B) above, Plaintiffs were subjected specifically to the arrest-processing and force-related policies alleged "based on their position in or ***proximity to*** a perceived group." SAC ¶ 267 (emphasis added). *See also,* SAC ¶¶ 278, 285, 330, 349.

If Defendants' argument held, Judge Sullivan's *Dinler* decision would be wrong. And, indeed, the relevant decision was limited to issues implicating *Monell*: two points about underlying probable cause specifically for "journalists and bystanders," as well as "(3) whether the City's suspension of its summons policy for minor offenses, when those offenses related to the RNC, was constitutionally permissible; and (4) whether the City's blanket fingerprinting policy with respect to RNC-related arrests was lawful and constitutionally permissible." *Id.* at *9-10. But as Judge Sullivan explained, those "RNC-related" policies were applied — just as was the case for the protest-related policies here — to non-protesters,[19] and policy claims can lie for plaintiffs who were not actively *participating* in a protest. *Id.* at *50.

Finally, Defendants' arguments made in passing that the officers did not *in fact* have the motivations alleged, and were not following the well-pled policies alleged, all require the Court to ignore well-pled facts.

## III. Defendants' Curfew Arguments Fail.

Defendants briefly argue that probable cause for curfew arrests defeats all of Plaintiffs claims. Yet the sole case they cite for this — Judge McMahon's motion to dismiss decision in *In re Policing* (548 F. Supp. 3d at 412) — does not go as far as Defendants say.

---

[19] Even calling Plaintiffs "non-protesters", given that Plaintiffs were actually protesters — and the complaint alleges that they were targeted because of their perceived membership in the protest — is likely a stretch.

First, even for those arrests after the curfew, in *In re Policing*, Judge McMahon sustained and allowed claims by **all** Plaintiffs to go forward — including those claims alleging policies of "making false arrests at large protests throughout New York City." 548 F. Supp. 3d at 402.[20]

Second, and perhaps more importantly, as is evident from Judge McMahon's decision, the First Amendment, Fourteenth Amendment, and other claims that arise from (among other things) the City's "custom or policy of using excessive force and making false arrests at large protests" (*id.* at 402) and "policy of deliberate indifference to Plaintiffs' constitutional rights leading up to and during the first few days[21] of the BLM protests" (*id.* at 406).

Since the only authority Defendants cite for their curfew order argument is Judge McMahon's decision in *In re Policing* — and they do not distinguish it — they seemingly concede it was correct in how it handled *all* the claims here, and what effect the curfew orders had on those claims. Given that seeming concession, the parties seem to agree that the same claims that went forward in *In re Policing* should go forward here.

IV. **Defendants' Citation-Free Arguments About the Non-Party Binding Effect of the *Sow* Settlement and the *In re Policing* Consent Decree are Baseless.**

Finally, Defendants make two arguments — essentially in passing — that suggest this case is somehow barred by either the settlement in *Sow* or the ongoing, injunctive (non-class) Consent Decree. *See* DMOL at 14 n. 4 and at 22. These arguments are premised on an aggressive misreading of black-letter judgment, contract, and class action law. Defendants cite no cases to support either of

---

[20] Defendants also leave out a core caveat in Judge McMahon's decision: "failing to give [a dispersal] order, especially where, as here, one is explicitly required, may be relevant evidence in connection with a claim of false arrest." *Id.* at 408. However, that caveat would not apply here, since any claims against individual officers would not have been tolled — and Plaintiffs are not pursuing the limited *Monell* claims from *Sow* that Judge McMahon dismissed.

[21] The caveat "first few days" is significant because, as described in the *Sow* FAC and the SAC here, the curfew order was in place for all of those "first few days." So, necessary in the very decision Defendants cite is the proposition that the claims here are well-pled, notwithstanding the curfew orders.

these points, presumably because no case supports their argument.[22] And, indeed, binding cases —
cases that Defendants presumably found and reviewed in drafting these points — unambiguously bar
these arguments.

### A. Defendants' argument that a settlement Plaintiffs are bound by a settlement they are not parties to is barred by Supreme Court precedent.

Defendants argue the *Sow* Plaintiffs' choice to dismiss **their** class claims outside "the 18
locations" somehow means **these** "plaintiffs' claims were voluntarily dismissed with prejudice."
DMOL at 11 n.4.[23] Not so.[24] As the Supreme Court has explained, Defendants "want[] to bind
[Plaintiffs] as [] member[s] of a class action (because it is only as such that a nonparty in [Plaintiffs']
situation can be bound)." *Smith*, 564 US at 315. "But wishing does not make it so." *Id.* A "proposed
class action" cannot "bind nonparties." *Id.* The

To get there, start with the fact that the *Sow* Stipulation and Order is a contract, between the
*Sow* plaintiffs (but no Plaintiff here) and (as relevant) the overlapping Defendants in both this case
and *Sow*. At a basic level, then, Defendants' argument is a misreading of basic contract principles.

---

[22] As the Court may recall, Plaintiffs initially intended to move for sanctions on Defendants' motion. Had Defendants only made the arguments in this point and those made in the initial motion to dismiss, Plaintiffs would have: These arguments are frivolous because they are incompatible with basic structure of our adversarial legal system. However, the argument that Plaintiffs are not part of the *Sow* Proposed Class is at least structurally non-frivolous — and was made in Defendants' second motion to dismiss for the first time, making this motion meaningfully different from the first.

[23] Defendants' argument also seems to be premised on equivocation about on what "plaintiffs" means. There is no overlap between Plaintiffs here and the plaintiffs in *Sow*. So, to say "**plaintiffs**' claims were voluntarily dismissed with prejudice" (DMOL at 11 n.4) tries to substitute what "plaintiffs" referred to in *Sow* with what it means in this case. "Plaintiffs" — meaning the Plaintiffs here — did *nothing* in *Sow*. Meanwhile, "Plaintiffs" is a defined term in the *Sow* Stipulation and Order and does not include any Plaintiff here. *See Sow* Stipulation and Order at 1.

Defendants' argument thus ignores the rule that "[p]hrases constructed in the passive voice use an implied subject or actor who carries out the verb." *McMunn v Babcock & Wilcox Power Generation Group, Inc.*, 869 F3d 246, 266 (3d Cir 2017). "Thus, the question is *who*" is doing the withdrawing and dismissing, and "[t]he obvious answer is that" it is the *Sow* plaintiffs. *Id.* (emphasis in original); *see, also, e.g., Sow* Stipulation and Order ¶¶ 87 at 88 (earlier paragraphs with those plaintiffs dismissing claims).

[24] This also puts aside the City's failure to say *anything* in response to the request the City "say something immediately" if it was going to "assert that [Plaintiffs] claims are extinguished by [the *Sow*] settlement," so Plaintiffs here could file objections. Green Ex. 1 at 1. If there is any ambiguity, evidence like Green Ex. 1 — and likely other evidence revealed in discovery — would bar Defendants' reading.

Plaintiffs *here* did nothing in *Sow*. And a contract can only bind a party who signs it, or is in privity with the signatories — using the doctrine of "virtual representation." *Greenwich Life Settlements, Inc. v Viasource Funding Group, LLC*, 742 F Supp 2d 446, 454 (SDNY 2010); *see also, Stapleton v Barrett Crane Design & Eng'g*, 725 F App'x 28, 30 (2d Cir. 2018). Defendants do not argue privity directly, because they cannot.

Instead, to get around the lack of privity — and establish "virtual representation" — Defendants seem to lean on the class nature of the *Sow* Stipulation and Order. *See, e.g., Thompson v Global Contact Servs., LLC*, 2021 US Dist LEXIS 146143, at *31 (EDNY Aug. 4, 2021) ("Because Plaintiff was a class member, Plaintiff's interests were represented by the State Court Class Action plaintiffs and accordingly was in privity with them."). But "[a]bsent certification of a class under Federal Rule 23, the precondition for binding" any non-class member is "not met." *Smith v Bayer Corp.*, 564 US 299, 301 (2011).

That is, "[n]either a proposed, nor a rejected, class action may bind nonparties" (*id.*), and that is because "preclusion" of non-parties' claims "shorn of Rule 23's procedural protections" for those parties is impermissible. *Id., citing Taylor v Sturgell*, 553 US 880, 900 (2008). Indeed, the Supreme Court "could hardly have been more clear that a properly conducted class action, with **binding effect on nonparties**, can come about in federal courts in just one way--through the procedure set out in Rule 23." *Id* (emphasis added). As Wright and Miller explain:

> "Pursuant to the same general principle that claim preclusion does not apply to matters that could not be advanced in a prior action, individual actions remain available to pursue any other questions that were expressly excluded from the class action."

18A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4455 (2d ed.). And indeed, what Defendants cite here is the exact "exclu[sion] from the class action" of Plaintiffs' claims here. *Id.*

In short, since there was no certified class that included Plaintiffs here, and Plaintiffs here did not sign (and were not in privity with anyone who signed) the settlement Defendants cite, they cannot

be bound.  That result is black letter law, and Defendants cite no cases for their claim otherwise, presumably because there are none.  Again, as the Supreme Court said:  While Defendants want to bind Plaintiffs (and seemingly, anyone in the *Sow* Proposed Class) without using Rule 23, "wishing does not make it so." *Smith*, 564 US at 315.

### B. Defendants' claim that a non-class consent decree with only injunctive relief bars damages claims is meritless.

Defendants argue Plaintiffs damages "claim[s] regarding policing at protests should be precluded because there exists ongoing relief directly addressing th[ose] claim[s]" in the Consent Decree.  DMOL at 22.  Again, that is simply not how claim preclusion works.  "Every federal court of appeals that has considered the question has held that a class action seeking ***only declaratory or injunctive relief*** does not bar subsequent individual suits for damages." *In re Vitamin C Antitrust Litig.*, 279 FRD at 114 (collecting cases[25]) (emphasis added in *In re Vitamin C*).  That rule is long-established in this Circuit. *Jones-Bey v. Caso*, 535 F.2d 1360 (2d Cir. 1976).

Moreover, all these cases are situations in which there was at least a class — but only an injunctive class — certified covering the plaintiffs.  So in those cases, the defendant made at least *some* argument that a non-party could be bound even where unsuccessful.[26]  But here, there is a private and government consent decree that only provides injunctive relief, *without* using the class mechanism.  Defendants' claim that Consent Decree "should be" read to "preclude[]" damages claims is unmoored from the basic functioning of claim preclusion, party identity, and consent decrees.  DMOL at 23.

---

[25] *See, e.g., Cameron v. Tomes*, 990 F.2d 14, 17 (1st Cir. 1993); *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996); *Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir. 1993); *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir. 1983) (per curiam); *Crowder v. Lash*, 687 F.2d 996,1009 (7th Cir 1982).

[26] While it appears the Second Circuit has not had occasion to consider whether due process is consistent result Defendants urge — perhaps because it rejected the underlying argument on its own terms in 1976 — the Ninth Circuit has even held it would "offend due process to preclude any suit for damages as a result of prior membership in a Rule 23(b)(2) class seeking only injunctive relief." *Id., describing Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) and *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).

Predictably, then, Defendants do not cite a single case for their remarkable argument, presumably because no case exists.  Thus, this argument fails too.

## CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court deny the pending motion to dismiss.

Dated:    July 10, 2025
          Queens, New York

Respectfully submitted,

**BELDOCK LEVINE & HOFFMAN LLP**

By: _____
    Jonathan C. Moore
    David B. Rankin

99 Park Avenue, PH/26th Floor
New York, New York 10016
    t: 212-490-0400
    f: 212-277-5880
    e: jmoore@blhny.com
       drankin@blhny.com
       oclark@blhny.com

**WYLIE STECKLOW PLLC**

By: _____
Wylie Stecklow
Wylie Stecklow PLLC
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**

_____

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green
Regina J. Yu

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com