24 Civ. 07064 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLOW FRIEDLAND, STEVEN GONZALEZ, and MIRIAM SIERADZKI,

                          Plaintiffs,

        -against-

CITY OF NEW YORK, FORMER MAYOR BILL DE BLASIO, FORMER NEW YORK CITY POLICE DEPARTMENT COMMISSIONER DERMOT SHEA, and FORMER NEW YORK CITY POLICE DEPARTMENT CHIEF OF DEPARTMENT TERENCE MONAHAN,

                          Defendants.

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*Attorneys for Defendants*
*100 Church Street, 3rd Floor*
*New York, NY 10007*

*By: Yini Zhang*
*Tel: (212) 356-3541*
*E-mail: yinzhan@law.nyc.gov*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ I

TABLE OF AUTHORITIES ........................................................................................................ II

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    POINT I ............................................................................................................................. 1

        COUNSEL'S DECLARATION SHOULD BE STRICKEN IN PART ................... 1

    POINT II ............................................................................................................................ 2

        PLAINTIFFS' INTERPRETATION OF THE SOW PROPOSED CLASS RENDERS IT MEANINGLESS ........................................................................... 2

            A.  Interjecting "Arguably" and Contract Interpretation Into the Determination Is Unpersuasive ................................................................. 2

            B.  Plaintiffs' Reading of Clause (a) of the Sow Proposed Definition Is Overly Broad .............................................................. 3

            C.  Plaintiffs Attempt to Unilaterally Extend the Statute of Limitations ........ 6

            D.  Plaintiffs Were Not Proposed Class Members under Clause (a) ............... 7

            E.  Plaintiffs Are Not Proposed Class Members Under Clause (b) ................. 7

            F.  If Plaintiffs Were Part of The Sow Proposed Class, Then Their Claims Were Voluntarily Dismissed By The Sow Settlement ..................... 8

    POINT III ........................................................................................................................... 9

        PLAINTIFFS FAIL TO REBUT DEFENDANTS' MONELL ARGUMENTS ....... 9

    POINT IV ......................................................................................................................... 10

        THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFFS FOR CURFEW VIOLATIONS ........................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974)......................................*passim*

Biden v. Nebraska, 600 U.S. 477 (2023) ......................................................................................... 6

Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc., 582 U.S. 497 (2017) ............................................... 7

Defries v. Union Pac. R.R. Co., 104 F.4th 1091 (9th Cir. 2024)..................................................... 2

Doe v. Pataki, 481 F.3d 69 (2d Cir. 2007)................................................................................... 2, 3

Elghossain v. Bank Audi S.A.L., 2023 U.S. Dist. LEXIS 175684
    (S.D.N.Y. Sep. 29, 2023).......................................................................................................... 1

Higginbotham v. Sylvester, 741 F. App'x 28, 30 (2d Cir. 2018)................................................... 10

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,
    714 F. Supp. 3d 65 (E.D.N.Y. 2024) ........................................................................................ 6

In re Petrobras Sec. Litig., 862 F.3d 250 (2d Cir. 2017) ................................................................ 4

Packard v. City of New York, 15 Civ. 07130, 2019 U.S. Dist. LEXIS 38791
    (S.D.N.Y. Mar. 8, 2019) ........................................................................................................... 5

Paribas v. N.M. State Inv. Council, 24 Civ. 635, 2025 U.S. App. LEXIS 12181
    (2d Cir. May 20, 2025) ......................................................................................................... 8, 9

Peoples v. Annuci, 11 Civ. 2694 (ALC), 2021 U.S. Dist. LEXIS 60909
    (S.D.N.Y. Mar. 30, 2021) ......................................................................................................... 2

Perez v. Manna 2nd Ave. LLC, 2016 U.S. Dist. LEXIS 179222
    (S.D.N.Y. Dec. 27, 2016).......................................................................................................... 1

Taylor v. Sturgell, 553 U.S. 880 (2008) .......................................................................................... 8

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................................... 11

Federal Rules of Civil Procedure Rule 23 ................................................................................... 3, 4

**Other Authorities**

New York City Emergency Executive Order No. 117 ................................................................. 10

**PRELIMINARY STATEMENT**

Plaintiffs' opposition to defendants' renewed motion to dismiss the Second Amended Complaint relies on an overly broad definition of the Sow FAC proposed class to try to impermissibly extend the statute of limitations. Plainly, plaintiffs were not members of the Sow proposed class and cannot avail themselves of the tolling under American Pipe. Moreover, even if they were members of the Sow proposed class, the settlement in that matter voluntarily withdrew their claims. Plaintiffs cannot save their clearly time-barred claims by mis-reliance on Ninth Circuit jurisprudence, nor by cherry picking through the Sow FAC, and accordingly the SAC should be dismissed with prejudice.

**ARGUMENT**

**POINT I**

**COUNSEL'S DECLARATION SHOULD BE STRICKEN IN PART**

The Declaration of J. Remy Green, dated July 10, 2025 (hereinafter "Pl. Declaration"), was filed with Pl. Op. ECF Dkt. No. 40. However, substantial portions of declaration are improper legal arguments and unsupported facts. Plaintiffs' counsel details how they would have advised parties differently based on the communications with the City, what counsel would have considered during the Sow certification process, and makes arguments regarding the purpose of American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). Pl. Declaration at 2-3. This is plainly outside of the scope of a declaration. See Perez v. Manna 2nd Ave. LLC, 2016 U.S. Dist. LEXIS 179222, at *10-*11 (S.D.N.Y. Dec. 27, 2016) (stating a declaration must be made based on personal knowledge and set out facts that would be admissible in evidence). Thus, "a court may disregard legal arguments improperly set forth in a declaration." Elghossain v. Bank Audi S.A.L.,

2023 U.S. Dist. LEXIS 175684, at *37 (S.D.N.Y. Sep. 29, 2023). Therefore, defendants respectfully submit that paragraphs four through eleven of Pl. Declaration should be stricken.

## POINT II

### PLAINTIFFS' INTERPRETATION OF THE SOW PROPOSED CLASS RENDERS IT MEANINGLESS

It is clear that plaintiffs are not part of the settled Sow class. They are also not part of the Sow FAC proposed class. Class Counsel—the same counsel here—drafted the Sow proposed class definition, which excludes plaintiffs. Tortured lexiconic reframing of the Sow proposed class cannot now save these plaintiffs' claims so that they can avail themselves of the American Pipe tolling.

**A. Interjecting "Arguably" and Contract Interpretation Into the Determination Is Unpersuasive**

Plaintiffs cite Defries v. Union Pac. R.R. Co. for the position that, if bystander plaintiffs "arguably" fall within the scope of an initial complaint's proposed class, they are entitled to the American Pipe tolling. 104 F.4th 1091, 1099 (9th Cir. 2024); see Pl. Opp. at 10-12. However, plaintiffs conveniently gloss over the fact that this "arguably" standard comes from the Ninth Circuit, which has *not* been adopted by, or binding in, the Second Circuit. Furthermore, plaintiffs fail to cite any case to support the contention that Second Circuit jurisprudence is consistent with the Defries "arguably" standard. Nor have plaintiffs advanced any arguments as to why the Court should even consider this standard as persuasive.

Plaintiffs also argue that the general principles of contract interpretation should be applied to analyzing proposed class membership. See Pl. Opp. at 11. Plaintiffs cite Peoples v. Annuci, 11 Civ. 2694, 2021 U.S. Dist. LEXIS 60909, at *6 (S.D.N.Y. Mar. 30, 2021) and Doe v. Pataki, 481 F.3d 69, 75 (2d Cir. 2007) in support of their position. However, Peoples and Doe concern a

settlement agreement and consent decree respectively. See Peoples, 2021 U.S. Dist. LEXIS 60909, at *6; Doe, 481 F.3d at 75. Contract interpretation is appropriate where language is drafted by both parties that reflect their intent. However, the Sow FAC was drafted solely by Class Counsel. There is simply no common understanding of both parties for the Court to consider. Thus, defendants must rely upon textual interpretation of the Sow FAC proposed class definition to assess whether plaintiffs were members. Upon review, the Sow proposed class definition that plaintiffs now advance would clearly be so broad as to be uncertifiable under to Federal Rules of Civil Procedure 23.

**B. Plaintiffs' Reading of Clause (a) of the Sow Proposed Definition Is Overly Broad**

Plaintiffs attempt to simplify their convoluted proposed class standard by including sentence diagrams in the Opposition. Pl. Opp. at 5-6. But the need for such visual parsing only emphasizes the overcomplicated nature of plaintiffs' definition—and the City's disadvantage in interpreting the drafters' intent. Nevertheless, plaintiffs allege that Clause (a) of the Sow FAC proposed class becomes: "all persons . . . targeted for their First Amendment protected activity. . . during [the] Protests." Pl. Opp. at 12 (internal quotation marks omitted). However, if these are the only requirements to be a member of the Sow proposed class, then the class would be too broad to certify.

Plaintiffs' interpretation of the proposed class definition appears to place no limitations on which First Amendment protected activities are at issue in Sow. Pl. Opp. at 13-14. Given the breadth of rights protected by the First Amendment, the potential number of class members is immeasurable without any sort of refining factor. This is only amplified by plaintiffs' argument that Clause (a) of the proposed class only requires that someone be "targeted" for their First Amendment protected rights. Pl. Opp. at 12. However, what actions amount to "targeting" is

vague. Indeed, even plaintiffs concede that the list is inexhaustive, principally so that they can self-servingly expand the boundaries to cover additional claims as they see fit. Pl. Opp. at 15-16.

The breadth of the class would be further expanded by the inclusion of "during" the protests. Plaintiffs reiterate that any inclusive violation must have happened "during" the protest, rejecting the notion that any alleged harm must have occurred "at" the protests. Pl. Opp. at 1, 14-15. However, "during" is a temporal—not a geographic—limitation. Merriam-Webster defines during as: "(1) throughout the duration of; (2) at a point in the course of." *During*, Merriam-Webster, https://www.merriam-webster.com/dictionary/during (last visited July 29, 2025). Thus, according to plaintiffs, to be a proposed class member, an individual merely needs to suffer a First Amendment violation within the same time period that a protest was occurring, regardless of the geographic proximity. In making this senseless interpretation, rather than giving firm contours to the definition of the proposed class, the use of the term "during" as argued here makes the proposed class definition overly broad. Of significance, the only geographic limitation included in the proposed class definition is "New York City protest marches." Sow FAC, at ¶ 510. In other words, if plaintiffs' contentions are true, then *any* action "targeting" a First Amendment protected activity *anywhere* in New York City at the same time a protest related to police misconduct and reform was taking place would fall within the Sow proposed class. Thus, a public school principal criticizing an article published in the school paper in Staten Island, if it occurred simultaneously as a protest in Brooklyn, could arguably fit into the Sow proposed class definition.

Such a wide range of potential claims would never pass the predominance requirement of Rule 23(b)(3), because the questions affecting only individual members would likely predominate the questions of law or fact common to all the class members. See In re Petrobras Sec. Litig., 862

4

F.3d 250, 260 (2d Cir. 2017). For example, in Packard v. City of New York, plaintiffs sought certified of a class of:

> All persons who were wrongfully arrested in violation of their Fourth Amendment rights and charged with at least one count of disorderly conduct or obstructing governmental administration on September 15, 16, or 17, 2012 by police officers and in violation of their First Amendment rights while they were engaged in expressive political speech activity in connection with Occupy Wall Street Activities.

15 Civ. 07130, 2019 U.S. Dist. LEXIS 38791, at *5 (S.D.N.Y. Mar. 8, 2019). In recommending that the Court deny plaintiffs' motion to certify the class, the Honorable Stewart D. Aaron expressed concerns that the breadth of the class would require the Court to conduct individual probable cause inquires. Id. at *23. Notably, the Packard plaintiffs sought to represent a class of individuals arrested across *three* days in multiple locations. The Sow proposed class spanned more than *six months* in Clause (a) and had no end date in Clause (b). Thus, plaintiffs' interpretation of the Sow proposed class is overly broad.

Indeed, such a broad definition of the proposed class also contradicts the Sow action itself. Although plaintiffs' opposition rejects the geographic limitation that Sow class members had to be *at* a protest, all the named plaintiffs were physically at a protest as it was occurring. See generally, Sow FAC. To now claim that there is no requirement that a potential Sow class member be at a protest when the entire Sow FAC alleges violations of constitutional rights of protestors is, at best, odd, and, at worst, disingenuous. After all, what is Sow about if not the alleged mistreatment of individuals by NYPD during the protests across New York City following the death of George Floyd—as the Sow FAC begins by explaining. See Sow FAC at ¶¶ 1, 2.

Moreover, plaintiffs contend that because the words "protest-related" do not appear anywhere in the Sow proposed class definition, defendants grafted an additional requirement to the Sow proposed class. But rather than adding a restriction, it is the only reasonable interpretation

5

of the proposed class definition. The Sow proposed class does not exist in a vacuum, and the context of the entire Sow FAC must be considered. "'In textual interpretation, context is everything.'" Biden v. Nebraska, 600 U.S. 477, 511 (2023) (quoting A. Scalia, A Matter of Interpretation 37 (1997)). Furthermore, in their attempt to streamline the complicated proposed definition, plaintiffs consequently ignore the other portions of Clause (a). While they emphasize that the alleged constitutional violations were required to take place "during" and not "at" the protests, the fact remains that "the protest[s]" are the loci of interest—whether temporal or geographic. See Sow FAC at ¶¶ 510. To claim otherwise is to ignore the purpose of the Sow action as articulated by the FAC itself. The Sow plaintiffs claimed that they were physically at the protests engaged in protest activities when they allegedly suffered retaliation from NYPD as a direct result of their actions. The Sow plaintiffs then represented a class of similarly situated individuals. Hence, calling the arrests "protest-related" is not an impermissible addition of a requirement, but giving effect to the purpose of Sow.

### C. Plaintiffs Attempt to Unilaterally Extend the Statute of Limitations

In attempting to remove the implied requirement that any alleged constitutional violation must be related to the protests, plaintiffs are essentially asking the Court to issue a blank check to file putative class actions with the broadest proposed classes possible. Countless parties can then claim to be putative class members even after the action has concluded if proposed classes are drafted broadly and vaguely. In so doing, they could reap the benefits of extending the statute of limitations under American Pipe. By the very nature of class actions, they can take many years to resolve. See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 714 F. Supp. 3d 65, 76 (E.D.N.Y. 2024). Even after a settlement has been reached, as is the case here, parties can bring actions that would otherwise be barred by the statute of limitations by shoehorning claims into overly inclusive proposed class definitions. This, of course, is inconsistent

with the purpose of statutes of limitations: "Statutes of limitations are designed to encourage plaintiffs 'to pursue diligent prosecution of known claims.'" Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc., 582 U.S. 497, 504 (2017) (internal citations omitted). Plaintiffs' overinclusive interpretation should be rejected to discourage attempts to circumvent the statute of limitations.

### D. Plaintiffs Were Not Proposed Class Members under Clause (a)

Plaintiffs argue that they are Sow proposed class members because they were arrested for exercising their First Amendment rights to record police officers performing their duties in public "during" a protest. Pl. Opp. at 12-14. Defendants do not agree—nor do the documents incorporated by the pleadings support—that the arrest occurred "at" or "during" a protest.[1] It is indisputable that videos show plaintiffs walking down a sparsely populated street, seemingly alone, and without other protestors in their immediate vicinity. Def. Memo. at 16. Simply put, the arrests were not made during a protest.

### E. Plaintiffs Are Not Proposed Class Members Under Clause (b)

Plaintiffs argue that they were arrested subject to NYPD's *protest* policies and, thus, are proposed class members under Clause (b) of Sow. Pl. Opp. at 17. Plaintiffs do not argue that Clause (b) does not require that the arrests be protest-related. Plaintiffs, however, were not arrested for protest-related activities. See Def. Memo. at 13-17. Consequently, they were not arrested pursuant to NYPD's policies and practices related to protests.

---

[1] Plaintiffs' assertion that defendants do not dispute that they were arrested during a protest is patently false. At best, defendants simply indicated that the fact that plaintiffs "*may have been present at a protest earlier is coincidental, not integral to their arrests later that evening.*" Def. Memo. at 17 (emphasis added).

7

### F. If Plaintiffs Were Part of The Sow Proposed Class, Then Their Claims Were Voluntarily Dismissed By The <u>Sow</u> Settlement

If plaintiffs' broad reading of the putative class is accepted as true and they were proposed class members, then their claims were voluntarily withdrawn in the <u>Sow</u> settlement. "The identical factual predicate and adequate representation doctrines allow class action plaintiffs 'to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement.'" <u>Paribas v. N.M. State Inv. Council</u>, 24 Civ. 635, 2025 U.S. App. LEXIS 12181, at *9 (2d Cir. May 20, 2025) (internal citation omitted).

Here, if plaintiffs were in the proposed class, then it follows that their claims share an identical factual predicate with <u>Sow</u>. "[U]nder the identical factual predicate doctrine, '[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims.'" <u>Id.</u> at *9. Additionally, a "[c]lass action settlement 'may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint.'" <u>Id.</u> at *10 (internal citation omitted). Although plaintiffs, unlike those in <u>Paribas</u>, are not certified class members, their claims are sufficiently similar under their alleged broad proposed class definition to share integral facts with the <u>Sow</u> plaintiffs.

Moreover, plaintiffs' claims were adequately represented in <u>Sow</u>. A party's representation of a nonparty is considered "adequate" for preclusion purposes if "(1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party [in the first suit] understood herself to be acting in a representative capacity [of the nonparty] or the original court took care to protect the interests of the nonparty." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 900 (2008). "'Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.'" <u>Paribas</u>, 2025 U.S. App.

8

LEXIS 12181, at *10-*11 (internal citation omitted). Here, the interests of plaintiffs are clearly aligned with those of the Sow class. Plaintiffs are represented by the same counsel, plead the same causes of action, and, importantly, claim to be part of the proposed class outlined by Sow. In negotiating settlement on behalf of the putative class prior to certification, the Sow plaintiffs elected to withdraw any claim that did not fall within 18 specific geographic—not temporal—points. Sow Amended Stipulation at ¶ 90; see also, Sow Amended Final Approval Order at ¶ 21. These withdrawn claims would include plaintiffs' claims, which demonstrates that the Sow plaintiffs understood themselves to have the authority to do so. See Paribas, 2025 U.S. App. LEXIS 12181, at *11 (noting the choice not to assert certain claims is not dispositive of inadequate representation in settlements). As a result, if plaintiffs were proposed class members, then their claims were voluntarily withdrawn and enforcing their voluntary dismissal comports with due process, and their claims should be dismissed.

## POINT III

### PLAINTIFFS FAIL TO REBUT DEFENDANTS' MONELL ARGUMENTS

Plaintiffs argue, in part, that "the City's protest-related policies are applied to non-protestors frequently." Pl. Opp. at 19. However, plaintiffs ignore defendants' arguments that the specific protest-related policies and tactics that the SAC allege are inappropriate were simply not used here. As stated in defendants' motion, tactics such as kettling, use of batons, bicycles, and mass arrests without probable cause are not relevant in this case. Def. Memo. at 21. Thus, plaintiffs' Monell arguments fail.

Lastly, to the extent that plaintiffs' Monell claim seeks injunctive relief or policy and procedural changes, it should be precluded because there exists ongoing relief directly addressing this claim, in which plaintiff's counsel are participating. The parties in In Re: 2020 Demonstrations

9

settled for, in relevant part, the adoption and revision of certain policies and procedures on the policing by NYPD of "First Amendment Activities," which remains ongoing. See Decision and Order, dated February 7, 2024, In Re: 2020 Demonstrations, 20-CV-08924, ECF Dkt. No. 1174. Plaintiffs now seek injunctive relief in this new action for the very same claims that In Re: 2020 Demonstrations resolved. SAC at 66. Such claims for relief should be precluded by the Court.

## POINT IV

### THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFFS FOR CURFEW VIOLATIONS

There was probable cause to arrest plaintiffs for violating the curfew imposed by N.Y.C. Emer. Exec. Order No. 117. Crucially, plaintiffs dispute neither that they were violating curfew nor that probable cause existed to arrest them for the violation. Instead, plaintiffs argue, oddly, that because defendants cited to In Re: 2020 Demonstrations and there the Honorable Colleen McMahon allowed part of the curfew claims to proceed, that defendants concede that the claims are viable here. Pl. Opp. at 19; see also In Re: 2020 Demonstrations, ECF Dkt. No. 191 at 43-45. Plaintiffs' argument is nonsensical. It is beyond dispute that a false arrest claim must be dismissed where there was probable cause to arrest. See Higginbotham v. Sylvester, 741 F. App'x 28, 30 (2d Cir. 2018) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest"). Thus, regardless of the fact that plaintiffs' claims are time barred, they fail because there was probable cause to arrest plaintiffs.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant their renewed motion pursuant to Rule 12(b)(6), dismiss the Second Amended Complaint in its entirety, with prejudice, and for such other and further relief as the Court deems proper and just.

Dated:  New York, NY
        August 1, 2025

                                                            MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York
*Attorney for Defendants*
New York, New York 10007
(212) 356-3541

By:  /s/ *Yini Zhang*[2]
     Yini Zhang
     Senior Counsel
     Special Federal Litigation Division

cc:  Counsels of Record (By ECF)

---

[2] In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Reply Memorandum of Law, inclusive of point headings and footnotes, is 3,176. I have relied on the word count function of Microsoft Word to prepare this certification.